# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

## Kiel M. JOHANSON
### Chief Boatswain's Mate (E-7), U.S. Coast Guard

## CGCMG 0275

## Docket No. 001-69-12

## 21 November 2012

General Court-Martial convened by Commander, Coast Guard Atlantic Area.  Tried at Norfolk, Virginia, on 20-28 January 2011.

| | |
|---|---|
| Military Judge: | CAPT Gary E. Felicetti, USCG |
| Trial Counsel: | LT Kelly C. Blackburn, USCGR |
| Assistant Trial Counsel: | LT Michael O. Walker, USCGR |
| Defense Counsel: | LT Derek D. Butler, JAGC, USN |
| Assistant Defense Counsel: | LT Emilee K. Baldini, JAGC, USN |
| Appellate Defense Counsel: | LCDR Derek D. Butler, JAGC, USN |
| Assistant Appellate Defense Counsel: | LT Cara J. Condit, USCG |
| Appellate Government Counsel: | LCDR Vasilios Tasikas, USCG |

## BEFORE
## McCLELLAND, JOHNSON & NORRIS
### Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by general court-martial composed of officer and enlisted members. Contrary to his pleas, Appellant was convicted of five specifications of maltreatment of persons subject to his orders, in violation of Article 93, Uniform Code of Military Justice (UCMJ); one specification of abusive sexual contact and one specification of indecent exposure, both in violation of Article 120, UCMJ; and three specifications of assault and battery, in violation of Article 128, UCMJ.  The court sentenced Appellant to no punishment.  The Convening Authority approved the findings and sentence.

Before this Court, Appellant presents the following issues:

I.      Whether a servicemember can be convicted of abusive sexual contact under the theory of being substantially incapable of declining participation when the victim was fully capable of communicating a lack of consent, communicated a lack of consent, moved away, and was neither asleep, unconscious nor under the influence of any drugs or alcohol.

II.     Whether the military judge erred to the substantial prejudice of Appellant by adding to the Military Judges' Benchbook instruction and instructing the members that mental disorientation could amount to substantial incapacity under Article 120, UCMJ.

III.    Whether Appellant's due process rights were violated when the military judge judicially altered the burden-shifting language of Article 120 and instructed the members accordingly.

We summarily reject the third issue.  Appellant's argument that the military judge judicially altered the statute, invading the domain of Congress, is a novel one that we are not inclined to accept.  We discuss the first two issues and grant relief.

**Facts**

Appellant's assignment to USCGC VENTUROUS (WMEC 625) included the period December 2007 to February 2009, the period during which he committed the offenses of which he was found guilty.  Members of the VENTUROUS deck force, of which Appellant was the leading petty officer as a Boatswain's Mate First Class (E-6), from time to time while VENTUROUS was underway engaged in behavior called "hazing rituals," "tie-down rituals," or similar terms, in which a targeted individual would be tied up by the hands and feet, and substances such as baby powder and the liquid from personal marker lights ("glow sticks") would be mixed on the individual's chest and abdomen.[1]  Sometimes someone would slap the individual on the abdomen, giving him "pink belly."  In some instances, someone would "teabag" the individual, that is, place his genitals on or close to the individual's face or head, while the individual was tied up.

Appellant was convicted of involvement in rituals targeting six individuals.  One of the individuals was an unrated seaman, GL, who was named as a victim of teabagging by Appellant in a specification of abusive sexual contact under Article 120, as well as being named as a victim in a

---

[1] All participants and victims in the events were male.

specification of maltreatment by hazing (tying up) under Article 93.[2]  The abusive sexual contact specification is the subject of the issues Appellant raises before this Court.

As alleged in the specification at issue, Appellant "did . . . wrongfully engage in sexual contact, to wit: rubbing his scrotum against the back of [GL]'s neck, with [GL], by doing so when [GL] was substantially incapable of physically declining participation in the sexual contact."[3]  This language states an offense under Article 120, which provides, in pertinent part, that any person who engages in or causes sexual contact with or by another person "if that other person is substantially incapacitated or substantially incapable of declining participation in the sexual [contact]" is guilty of abusive sexual contact.  Article 120(c)(2)(B), by reference from Article 120(h).

Describing the incident on direct examination, GL testified that he was tied up by his wrists and ankles with Appellant holding the line on his right hand, and various persons put shaving cream on his chest, smacked his belly, and wrote on his stomach.  (R. at 17891-97.[4])  He continued,

> Then towards the end of it, Chief Johanson let go of his line, [I] kind of sat up, he undid his pants, stepped behind me and he was, like Ohhh, and he shook his hips or whatever and his testicles hit the back of my head approximately three to four times for a very short period of time.  I then was able to sit up at this point and I moved forward to avoid getting hit any more and that was pretty much it.

(R. at 17897-904.)

At a later point on direct examination, GL testified as follows:

Q:  Now, you previously stated that at some point being when Johanson dropped the line, and you tried to sit up.

A:  Yes ma'am.

Q:  At that point in time, would it have been possible for you to make a run for it?

---

[2] These two specifications, along with a related specification of indecent exposure, were found multiplicious for sentencing by the military judge.

[3] The word "physically" in this specification has no referent in the statute and is not in the sample specification found in the Manual for Courts-Martial, United States (2008 ed.).  We do not perceive that it affects the meaning of the specification.

[4] The transcript has line numbers rather than page numbers.

A: I don't remember if I still was with this line or not, but I was kind of discombobulated, I was tired from struggling. If I knew what was going to happen, I probably would have got up and ran away faster, but like I said, I sit up, kind of get up as it was happening.

Q: You previously stated that BMC Johanson's genitals made contact with the back of your head. At that time, in your opinion, would it have been possible for you to avoid that contact?

A: If I knew it was going to happen, then yes, but I avoided it as soon as it happened, that's why it only lasted about two seconds, because I just get away and leaned forward.

Q: But you couldn't have avoided it outright?

A: No not at the time, ma'am.

(R. at 17950-73.)


The military judge instructed the members, in connection with the specification at issue, as follows:

'Substantially incapable' means that level of mental impairment due to consumption of alcohol, drugs, or similar substance[;] while asleep, unconscious, mentally disoriented or for other reasons[;] which rendered the alleged victim unable to appraise the nature of the sexual contact at issue or unable to physically communicate unwillingness to engage in the sexual conduct at issue.

(R. at 27392-98; *see also* written instruction given to the members, Appellate Ex. LIV (54) at 20.) Appellant objected to inclusion of the term "mentally disoriented" in the instruction. (R. at 26158-66, 26818-30.)


### Substantially incapable of declining participation

Appellant argues, as he did in moving at trial for a finding of not guilty on this specification, that abusive sexual contact requires that the victim be unconscious, asleep, intoxicated, or in a similar mental state, while GL had no mental impairment. The Government acknowledges that the focus of the relevant part of the statute is on the mental state of the alleged victim. We agree; the mere fact that GL did not see the impending contact because it came from behind him does not make him substantially incapable of declining. The Government argues that the environment created for the event (low light, "techno" music) and the physical assaults on GL diminished his ability to think and put him into a substantially diminished mental state.

4

The test for legal sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Mack*, 65 M.J. 108, 114 (C.A.A.F. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We review legal sufficiency *de novo*. The issue requires us to interpret the statute in order to determine whether the evidence is sufficient under the statute, a significant task in this case.

Appellant also argues that the military judge's addition of the term "mentally disoriented" to the instruction on the meaning of "substantially incapable" was erroneous. The Government, of course, disagrees. "Whether a panel was properly instructed is a question of law reviewed *de novo*." *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008) (citing *United States v. Maxwell*, 45 M.J. 406, 424 (C.A.A.F. 1996)).

Direct evidence of GL's substantially diminished mental state consists only of GL's statement that he was "discombobulated." The Government also argues the fact that it took GL two seconds, by his own estimate, to react to the contact on the back of his head shows that he had a substantially diminished mental state, but we see no basis for that contention. The delay, if it can be called that, is readily explained by the fact that GL probably could not instantly determine what was contacting the back of his head. As we see it, the Government exaggerates the effect of the environmental conditions and assaults on GL's mental state, in effect speculating on why he would be discombobulated and in the process making his discombobulation appear more significant than it was.

But regardless of exaggeration, there remains a real issue of statutory interpretation: where to draw the substantially incapable boundary line on the continuum of mental states. We must consider this issue both as a precondition to addressing sufficiency of the evidence and in deciding whether the judge's instruction was erroneous.

The Government cites cases from the Circuit Courts of Appeals interpreting 18 U.S.C. 2242, whose language is very close to that of Article 120.[5] In both *United States v. Demery*, 674 F.3d 776

---

[5] Under Article 120, abusive sexual contact is committed by a person who engages in or causes sexual contact with or by another person if that other person is "substantially incapacitated or substantially incapable of . . . declining

5

(8th Cir. 2011), and *United States v. Barrett*, 937 F.2d 1346 (8th Cir. 1991), the sleeping victim became aware of her assailant in the midst of his assaulting her, preparatory to a sexual act. In each case, arguably she was awake before penetration occurred, but the court held the jury could properly find that she was incapable of declining participation in the sexual act that occurred. We see these cases as dealing with the process of awakening from sleep. We do not find them helpful for the situation in the case before us.

The statute itself offers a possible clue regarding the intended boundary line. In the definition of consent, Article 120(t)(14) declares that a person cannot consent to sexual activity if the person is, among other things, substantially incapable of appraising the nature of the sexual conduct at issue due to "mental impairment or unconsciousness resulting from consumption of alcohol, drugs, a similar substance, or otherwise." Although this language is, by the context, clearly not directly applicable to "substantially incapable of declining participation," it is suggestive of the level of mental impairment the statute generally intends to recognize.

Resort to legislative history yields the following. Congress enacted the new Article 120 as part of the National Defense Authorization Act for Fiscal Year 2006, Pub. L. No. 109-163, 119 Stat. 3136 (2006). This followed Congress's direction to the Department of Defense in the Ronald W. Reagan Defense Authorization Act for Fiscal Year 2005 to "review the Uniform Code of Military Justice and the Manual for Courts-Martial with the objective of determining what changes are required to improve the ability of the military justice system to address issues relating to sexual assault and to conform the Uniform Code of Military Justice and the Manual for Courts-Martial more closely to other Federal laws and regulations that address such issues." Pub. L. No. 108-375, § 571(a), 118 Stat. 1811, 1920 (2004). No later than 1 March 2005, the Secretary was to "submit to the Committee on Armed Services of the Senate and the Committee on Armed Services of the House of Representatives a report on the review carried out under subsection (a)." *Id.* at § 571(b), 118 Stat. 1811, 1920.

Pursuant to that direction, the Department of Defense produced SEX CRIMES AND THE UCMJ: A REPORT FOR THE JOINT SERVICE COMMITTEE ON MILITARY JUSTICE (2005)

---

participation in" the sexual contact. Under 18 U.S.C. 2242, abusive sexual contact is committed when a person knowingly engages in sexual contact if that other person is "physically incapable of declining participation in" the sexual contact.

(hereinafter "Sex Crimes and the UCMJ"), available at http://www.dod.mil/dodgc/php/docs/subcommittee_reportMarkHarvey1-13-05.doc. "Option 5" of the report presents suggested statutory language that is essentially identical to the language eventually enacted in the new Article 120 as Article 120(c) and (h), which are the portions of Article 120 involved in the issues before us. "Sex Crimes and the UCMJ" at 294-95. The report's discussion of the source and rationale for Article 120(c) identifies its source as 18 U.S.C. § 2242, and explains the difference between 18 U.S.C. § 2242's "incapable" and Article 120(c)'s "substantially incapable" thus:

> [I]nstead of the word, "incapable" the term "substantially incapable" has been added in subsection 920(c)(2).[6] This is more consistent with subsection 920(a)(5) which uses "substantially impairs" for the victim's mental state after being drugged by an assailant. The use of the qualifying word, "substantial" is clearer. It avoids the possibility that a fact finder might require the victim's complete or total incapacity, or alternatively the fact finder might conclude that any incapability whatsoever is sufficient.

"Sex Crimes and the UCMJ" at 257.

Appellant's stated issue questions whether abusive sexual contact upon a substantially incapable victim can be found where the alleged victim was neither asleep, unconscious, nor under the influence of drugs or alcohol. (Appellant's Br. at 1.) His actual argument is that a conviction for abusive sexual contact requires proof that the victim was unconscious, asleep, intoxicated, or in a similar mental state. (Appellant's Br. at 3-4.) Considering the clues noted above from elsewhere in the statute and from "Sex Crimes and the UCMJ," as well as ordinary understanding of the statutory language, we are inclined to agree. However, this leaves open the question of what the borders of that "similar mental state" are.

The narrower question of whether it is proper to add the term "mental disorientation" to the list of conditions that could render a person substantially incapable, as the military judge did in his instructions to the members, is easier to answer. First, disorientation, meaning impaired awareness of position or relationship with surroundings[7], is inapt, as the capability to decline participation does not seem likely to depend on spatial awareness. This gives the instruction a vague character, allowing members more latitude to read into it their personal approaches. Second, we believe "mental disorientation" imparts a distinctly lesser degree of mental impairment than the other

---

[6] 10 U.S.C. 920(c)(2) is Article 120(c)(2), UCMJ.
[7] The American Heritage Dictionary of the English Language 520 (4th ed. 2000).

conditions listed in the instruction, lowering the bar to a conviction. This is especially so when combined with the rest of the instruction, which, instead of adhering to the specification's language of incapability to physically decline participation, injected other, irrelevant statutory language: "unable to appraise the nature of the sexual contact at issue" (Appellate Ex. LIV (54) at 20) – language that invited the members to consider the fact that GL couldn't see the contact coming.

In short, we conclude that the military judge erred by including the term "mental disorientation" in the instruction over defense objection. We do not doubt that this error was prejudicial.

Returning to the question of sufficiency of the evidence, we do not see this case as close to the border, indistinct as that border may be. Without fixing the border, we believe "substantially incapable" means much more impairment than GL can be inferred from this record to have suffered. With due attention to the term "substantially," the evidence clearly shows that GL's mental state was not substantially impaired and that he was not substantially incapable of declining participation, if his capability was impaired at all. He stated that if he had known what was coming, he "probably would have got up;" he did take avoidant measures within two seconds upon feeling the contact. "Discombobulated" certainly does not have a precise meaning, hence it can only be considered suggestive of some unknown degree of mental impairment. On the other side, everything in GL's testimony, including his behavior as he described it and his assessment of the situation, indicates that he was not substantially impaired.

We do not deny that there may be a diminished mental state unrelated to unconsciousness, sleep, or intoxication that would constitute the substantial incapability contemplated by the statute for abusive sexual contact. In our view, the evidence in this case clearly falls short of establishing that GL was substantially incapable of declining participation in the sexual contact. Given a proper understanding of the law, we believe no rational factfinder could find Appellant guilty of abusive sexual contact.

### Lesser included offense

Article 59(b), UCMJ, allows us to affirm a lesser included offense. We next consider whether we should do so in this case. The members were not instructed on any lesser included

offense[8], but we are not precluded from considering any that may exist. *United States v. Upham*, 66 M.J. 83, 87-88 (C.A.A.F. 2008).

Wrongful sexual contact and assault consummated by battery appear to be possible lesser offenses included in abusive sexual contact of a person substantially incapable of declining participation. Wrongful sexual contact substitutes the element of lack of consent for the element of substantially incapable. Surely a lack of consent is inherent in substantial incapability of declining participation. We think Specification 2 of Charge IV sufficiently alleges wrongful sexual contact. Importantly, the defect in the evidence and in the military judge's instruction become entirely inconsequential in the lesser offense. Assault consummated by battery is also included. *See United States v. Bonner*, 70 M.J. 1, 3 (C.A.A.F. 2011) (holding that assault consummated by battery is a lesser included offense of wrongful sexual contact).

We cannot affirm the conviction of abusive sexual contact. We will affirm, instead, a conviction of wrongful sexual contact.

We need not consider the impact of this reduction in the offense on the sentence, since Appellant was sentenced to no punishment.

### Decision

We have reviewed the record in accordance with Article 69, UCMJ. Upon such review, we determine that the finding of guilty of abusive sexual contact under Specification 2 of Charge IV cannot stand. We affirm a finding of guilty to the lesser included offense of wrongful sexual contact. The other findings and the sentence are determined to be correct in law and are affirmed.

Judges JOHNSON and NORRIS concur.

For the Court,

Andrew R. Alder
Clerk of the Court

---

[8] The defense specifically declined any lesser included offense (LIO) instruction regarding Charge IV, the charge at issue. R. at 26657-61.