# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.R. MCFARLANE, K.M. MCDONALD, M.C. HOLIFIELD**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

v.

**QUANTAUS R. RIGGINS**
**STAFF SERGEANT (E-6), U.S. MARINE CORPS**

**NMCCA 201400046**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 26 September 2013.
**Military Judge:** LtCol Christopher M. Greer, USMC.
**Convening Authority:** Commanding General, 2d Marine Logistics Group, Camp Lejeune, NC.
**Staff Judge Advocate's Recommendation:** Maj B.T. Ackison, USMC.
**For Appellant:** Jeffery S. Stephens, Esq.; Maj Jason Wareham, USMC.
**For Appellee:** Maj Paul M. Ervasti, USMC; LCDR Keith B. Lofland, JAGC, USN.

**26 November 2014**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

MCDONALD, Judge:

A military judge, sitting as a general court-martial, convicted the appellant, pursuant to his pleas, of one specification each of violating a lawful general order (fraternization), making a false official statement, and adultery, in violation of Articles 92, 107, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 907, and 934. The

appellant was convicted, contrary to his pleas, of one specification of violating a lawful general order (sexual harassment), five specifications of assault consummated by a battery,[1] and one specification of communicating indecent language, in violation of Articles 92, 128, and 134, UCMJ, 10 U.S.C. §§ 892, 928, and 934. The military judge sentenced the appellant to three years' confinement, reduction to pay grade E-1, and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged.

The appellant raises five assignments of error:

(1) the appellant's guilty plea to violating Article 1165, U.S. Navy Regulations (Charge I, Specification 2) was improvident where the regulation did not prohibit personal relationships between enlisted members;

(2) the evidence is legally and factually insufficient to support findings of guilt to the offenses of communicating indecent language (Charge IV, Specification 2) and assault consummated by a battery (Additional Charge, Specifications 1,2, and 4-6);

(3) the military judge erred when he found that assault consummated by a battery was a lesser included offense of abusive sexual contact and sexual assault as charged in the Additional Charge;

(4) the military judge erred when he failed to dismiss seven other specifications as an unreasonable multiplication of charges with the charge of fraternization; and,

(5) the appellant's sentence was inappropriately severe for this offender and his offense.

After careful consideration of the record of trial, the appellant's assignments of error, the parties' pleadings, and oral argument, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

---

[1] Under the Additional Charge, the appellant pled not guilty to four specifications of abusive sexual contact and two specifications of sexual assault, in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2012). He was convicted on Specifications 1, 2, and 4-6 of the lesser included offense of assault consummated by a battery. The military judge acquitted the appellant of Specification 3 of the Additional Charge.

**Factual Background**

The appellant, a married Staff Sergeant, knew Lance Corporal (LCpl) MS because they were originally assigned to the same support unit. As a staff noncommissioned officer (SNCO) in the unit, the appellant had direct supervisory authority over LCpl MS. In this capacity, the appellant assisted LCpl MS with processing some medical paperwork and became aware that she had violated a physician's order to refrain from consuming alcohol. On 1 March 2013, the appellant was relieved of his supervisory duties at the unit to allow him to prepare for a one-year deployment assignment. However, as an SNCO, the appellant remained in a position to issue orders to the Marines in the unit and continued to visit members of the unit.

On one such occasion, the appellant approached LCpl MS, who was in uniform, from behind, made a humping motion against her and said, "Oh, I just jizzed (sic) on myself." Record at 199. On other visits, the appellant asked about LCpl MS's sex life and requested sexual favors for assisting her with her medical paperwork and for keeping her from getting in trouble for drinking alcohol against her physician's orders. LCpl MS testified that these actions and comments made her very uncomfortable, especially because the appellant was senior in rank to her, and thus remained in a position where he had authority over her.

On 20 March 2013, the appellant again returned to his former unit and told the Marines he was going to send LCpl MS to get donuts for the unit. The appellant told LCpl MS he would meet her at Dunkin' Donuts. LCpl MS testified that she was hesitant to get the donuts, but the appellant insisted their trip to Dunkin' Donuts would be short. At trial, LCpl MS testified that because the appellant was of a higher rank and one of her SNCOs, she did not believe she could refuse. LCpl MS drove separately and the appellant followed. Once at Dunkin' Donuts, the appellant told LCpl MS to get in his truck and again asked her for sexual favors. Just prior to exiting her vehicle to get into the appellant's vehicle, LCpl MS turned on the voice recorder function of her cell phone to capture any more inappropriate comments or actions by the appellant. *Id*. at 204. At trial, the Government admitted the recording and transcription of the dialogue that took place between LCpl MS and the appellant that day.

LCpl MS testified that she was upset and scared because she was worried the appellant could still get her in trouble[2] or compromise the routing of her medical paperwork. After some discussion, LCpl MS eventually agreed to go for a drive with the appellant in his truck. LCpl MS got into the appellant's truck, but told him again that she did not want to have sex with him or perform any sexual favors. The appellant then drove LCpl MS to his on-base residence, pulled into his garage, and closed the garage door. LCpl MS testified that she was unfamiliar with her surroundings and had no confidence in her physical ability to run away at that time.

While his truck was parked in the garage, the appellant made a number of sexual advances towards LCpl MS. Throughout the encounter, LCpl MS referred to the appellant as "staff sergeant" and was heard crying and telling him "no" - that she did not want to have sex with him. The appellant persisted and, at one point, LCpl MS flashed her breast hoping it would make the appellant stop, but he instead leaned over and put his mouth on her nipple. LCpl MS said "no", pushed him off, and pulled her bra and shirt back down. Record at 210-11. At trial, LCpl MS explained that at this point, she felt like the appellant would not let her leave until "something to his favor was going to happen." *Id*. at 213.

Next, LCpl MS got out of the truck and followed the appellant into his house. The appellant told LCpl MS to sit on the couch and stood over her. He pulled his pants down and placed LCpl MS's hand on his penis and told her to rub it. The appellant tried to put his hand down LCpl MS's pants, but she again said "no" and pushed him off. *Id*. at 216. The appellant then put his hand down the front of LCpl MS's pants and digitally penetrated her vagina. He then told LCpl MS to pull her shirt up and placed his penis in between her breasts, then pulled her pants down and unsuccessfully tried to insert his penis into her vagina. The appellant next pulled LCpl MS's underwear and pants the rest of the way down to her boots, pulled her legs over his head, and inserted his penis into her vagina. LCpl MS said that she did not resist further because the appellant had not taken "no" for an answer.

Prior to deliberating on findings, the military judge requested counsel's respective positions on whether he could consider lesser included offenses (LIOs) under the Article 120

[2] In January 2013, LCpl MS posted a picture of herself taking a shot of alcohol on Facebook and was told by members of her command that she was going to receive nonjudicial punishment for drinking alcohol against her doctor's orders. Record at 206-07.

4

charges.  Specifically, the military judge asked counsel to consider whether he could consider assault consummated by a battery as an LIO of both sexual assault and abusive sexual contact.  Notwithstanding a defense objection, the military judge found that assault consummated by a battery was an LIO of both of these offenses and found the appellant guilty of the lesser included offense of assault consummated by a battery for Specifications 1, 2, 4, 5 and 6 of the Additional Charge.

## Improvident Plea

A military judge's acceptance of a guilty plea is reviewed for an abuse of discretion.  *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).  A military judge abuses his discretion in accepting a guilty plea where there is a substantial basis in law or fact for questioning the plea.  *Id.*  Questions of law arising from a guilty plea are reviewed *de novo*.  *Id.*  Whether a plea is provident depends on an appellant's understanding of the elements of his crime as explained to him by the military judge.  *United States v. Craig*, 67 M.J. 742, 744 (N.M.Ct.Crim.App. 2009), *aff'd*, 68 M.J. 399 (C.A.A.F. 2010) (*per curiam*).  If the explanation is inaccurate or incomplete, we must then look to the entire record to determine whether "the accused knew the elements, admitted them freely, and pleaded guilty because he was guilty."  *United States v. Jones*, 34 M.J. 270, 272 (C.M.A. 1992) (citation omitted).  Our focus in this later inquiry is on the appellant's awareness of the facts and law rather than on the military judge's "technical listing of the elements."  *United States v. Redlinski*, 58 M.J. 117, 119 (C.A.A.F. 2003).

The elements of a lawful general order violation are:

(1) that there was in effect a certain lawful general order or regulation;

(2) that the appellant had a duty to obey it; and,

(3) that the appellant violated or failed to obey the order or regulation.

MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 16b(1).

The appellant initially pled guilty to two violations of Article 92, UCMJ: a violation of Paragraph 4(a), Marine Corps Order 1000.9A for wrongfully sexually harassing LCpl MS; and a violation of Article 1165, U.S. Navy Regulations prohibiting fraternization between enlisted members.  The military judge

accepted the appellant's guilty plea to violating Article 1165, but did not find the appellant's plea provident to violating Marine Corps Order 1000.9A and entered a not guilty plea on his behalf but later found him guilty of the offense after trial on the merits. On appeal, the appellant argues that the military judge erred in accepting the appellant's guilty plea to a violation of Article 1165 because Article 1165 does not prohibit unduly familiar relationships between enlisted members. Contrary to the appellant's argument, Article 1165 does indeed prohibit such relationships.

> When prejudicial to good order and discipline or of a nature to bring discredit on the naval service, personal relationships between officer members **or between enlisted members** that are unduly familiar and that do not respect differences in grade or rank are prohibited. Prejudice to good order and discipline or discredit to the naval service may result from, but are not limited to, circumstances which: –
>
> > a. call into question a senior's objectivity;
> > b. result in actual or apparent preferential treatment;
> > c. undermine the authority of a senior; or
> > d. compromise the chain of command.

Article 1165, U.S. Navy Regulations, dated 14 Sep 1990 (emphasis added).

The military judge engaged in an in-depth discussion of Article 92, UCMJ, and Article 1165, U.S. Navy Regulations with the appellant. The discussion began broadly with a listing and explanation of the elements of Article 92, UCMJ, and then focused on the appellant's understanding of Article 1165, his duty to obey it, and a breakdown of the actions the appellant believed proved his guilt. Accordingly, we find no basis in law or fact to question the appellant's plea to Specification 2 of Charge I.

### Conviction on a Lesser Included Offense

The appellant claims that the military judge erred in finding that assault consummated by a battery is an LIO of both abusive sexual contact and sexual assault. More specifically, the appellant asserts that assault consummated by a battery is not an LIO of those offenses because assault consummated by a battery contains a lack of consent element that the charged Article 120 offenses do not, thus failing the elements test.

6

Having carefully considered the appellant's arguments and the holdings of our sister courts, who have addressed similar arguments made with respect to older versions of Article 120,[3] we find this assignment of error to be without merit.

Whether an offense is an LIO of another is a question of law we review *de novo*. *United States v. Miller*, 67 M.J. 385, 387 (C.A.A.F. 2009).

"An accused may be found guilty of an offense necessarily included in the offense charged. . .", so long as the elements test is met. Art. 79, UCMJ.

> Under the elements test, one compares the elements of each offense. If all of the elements of offense X are also elements of offense Y, then X is an LIO of Y. Offense Y is called the greater offense because it contains all of the elements of offense X along with one or more additional elements.

*United States v. Jones*, 68 M.J. 465, 470 (C.A.A.F. 2010). The elements test does not require that the greater offense and the alleged LIO employ identical statutory language, *United States v. Alston*, 69 M.J. 214, 216 (C.A.A.F. 2010), but merely that the LIO is a "subset" of the greater offense, *United States v. Bonner*, 70 M.J. 1, 3 (C.A.A.F. 2011), and therefore "one cannot prove the greater offense **without proving the lesser,** *United States v. Neblock*, 45 M.J. 191, 201 (C.A.A.F. 1996) (Cox, C.J., concurring in part and in the result) (emphasis added)**.".**

---

[3] We are aware of the debate among our sister courts with regard to LIOs in Article 120 offenses. *See e.g., United States v. Wagner*, No. 20111064, 2013 CCA LEXIS 573, unpublished op. (Army Ct.Crim.App. 29 Jul 2013) (holding that assault consummated by a battery and wrongful sexual contact are LIOs of aggravated sexual assault because "consent" and "permission" as used in the statutory language of Article 120 are synonymous and any grammatical difference is "not one of substantive import"), *aff'd,* 2014 CAAF LEXIS 816 (C.A.A.F. Aug. 4, 2014); *United States v. Johanson*, 71 M.J. 688, 693 (C.G.Ct.Crim.App. 2012) (holding that assault consummated by a battery and wrongful sexual contact are LIOs of abusive sexual contact charged under a "substantially incapable" theory because "a lack of consent is inherent in substantial incapability of declining participation. . . Assault consummated by a battery is also included"); *United States v. Pitman*, __ M.J. __, 2011 CCA LEXIS 93 at *11 (A.F.Ct.Crim.App. 19 May 2011) (holding that wrongful sexual contact is an LIO of aggravated sexual assault because "an allegation that a victim is compelled to submit to sexual acts by force clearly includes as a subset that the victim is not consenting"); *cf. United States v. Barlow*, __ M.J. __, 2014 CCA LEXIS 166 (A.F.Ct.Crim.App. 13 Mar 2014) (holding that wrongful sexual contact is not an LIO of abusive sexual contact because wrongful sexual contact requires proof of an element (i.e., "without permission") that abusive sexual contact does not), *review denied,* __ M.J. __, 2014 CAAF LEXIS 1055 (C.A.A.F. Oct. 31, 2014).

In addition to satisfying the elements test, we must also find that the appellant was on notice that Article 128 was an LIO of Article 120 as charged. Therefore, our analysis will begin with an application of the elements test, followed by a discussion of the factors this court applied in determining whether the appellant had sufficient notice to defend against the LIO, thereby satisfying any due process concerns.

### a. *Sexual Assault*

Under Article 120(b)(1), UCMJ, a person commits sexual assault by: (1) committing a sexual act upon another person; and does so by (2) threatening or placing that other person in fear or by causing bodily harm to that other person. Under Article 128, UCMJ, a person commits assault consummated by a battery if he: (1) did bodily harm to a certain person; and, (2) the bodily harm was done with unlawful force or violence. Art. 128, UCMJ.

We begin by comparing the elements of sexual assault and assault consummated by a battery. First, sexual assault and assault consummated by a battery both include as an element the touching of another person. Under sexual assault the touching must be a sexual act, whereas under assault consummated by a battery the touching need only be offensive. MCM, Part IV ¶¶ 45(b)(1) and 54 (c)(1)(a) respectively. Second, both offenses require the touching to be intentional. Finally, both statutes require that the victim either did not or could not consent to the touching. In the context of sexual assault, "a person cannot consent while under threat or fear. . . ." *Id*. at ¶45 (g)(8)(B). In the context of assault consummated by a battery, the Government must prove "that no legally cognizable reason [such as consent] existed that would excuse or justify the contact." *Bonner*, 70 M.J. at 3. While the language is different, the effect is the same. One cannot prove sexual assault by threatening or placing that other person in fear without necessarily proving assault consummated by a battery, because one cannot prove a legal inability to consent without necessarily proving a lack of consent. Accordingly, we find assault consummated by a battery to be an LIO of sexual assault under Article 120(b)(1), UCMJ (2012 ed.).

### b. *Abusive Sexual Contact*

The military judge also found that assault consummated by a battery was an LIO of the abusive sexual contact charges based on the record. Record at 316-17. Applying the same analysis as above, we agree. Under Article 120(d), UCMJ:

8

Any person subject to this chapter who commits or causes sexual contact upon or by another person, if to do so would violate subsection (b) (sexual assault) had the sexual contact been a sexual act, is guilty of abusive sexual contact and shall be punished as a court-martial may direct.

Because the abusive sexual contact charges in this case were all based upon sexual contacts that would have violated Article 120(b)(1), UCMJ, sexual assault by threatening or placing that other person in fear, our analysis in the preceding section is equally applicable here. Accordingly, we find assault consummated by a battery to be an LIO of abusive sexual contact, when that offense would have violated Article 120(b)(1), UCMJ, had the sexual contact been a sexual act.

c. *Due Process Notice of the LIO*

The Fifth Amendment requires that "'an accused be on notice as to the offense that must be defended against, and that only lesser included offenses that meet these notice requirements be affirmed by an appellate court.'" *Jones*, 68 M.J. at 468 (quoting *United States v. Miller*, 67 M.J. 385, 388 (C.A.A.F. 2009)). "The due process principle of fair notice mandates that 'an accused has a right to know what offense and under what legal theory' he will be convicted; an LIO meets this notice requirement if 'it is a subset of the greater offense alleged.'" *Id.* (quoting *United States v. Medina*, 66 M.J. 21, 26-27 (C.A.A.F. 2008)).

The logic of our superior court's holdings in *Medina* and *Jones* is evident in the case at bar. The appellant was charged with two Article 120, UCMJ, offenses alleging that he committed sexual acts and had sexual contact with LCpl MS by placing her in fear that, through the abuse of military position, rank, or authority, he would negatively affect her military career. Here, the appellant threatened LCpl MS that she would receive nonjudicial punishment for drinking alcohol against medical advice and/or would not have her medical paperwork processed if she did not allow him sexual favors. Looking to the statutory language, the UCMJ clearly states that a person cannot consent while under threat or fear. Art. 120(g)(8)(B), UCMJ. Simply reading the statute he was charged with violating would have informed the appellant that fear (and, by implication, a lack of consent) would play a major role in the Government's case.

Another source of notice in this case comes from the Manual for Courts-Martial. Although the President has not yet signed an Executive Order amending the Manual to address elements, lesser included offenses, and sample specifications for the newest version of Article 120, UCMJ, the Manual does contain a note suggesting that practitioners use Appendix 28, which contains the previous version of Article 120 and all of its accompanying provisions, as a guide.[4] Turning to that appendix, one finds that assault consummated by a battery is listed as an LIO for both aggravated sexual assault and abusive sexual contact. *See* MCM, Appendix 28, ¶ 45d(3)(b)) and ¶ 45d(8)(a).

For the reasons stated above, we find that the appellant had ample notice that assault consummated by a battery is an LIO for both sexual assault and abusive sexual contact.

### d. Variance

In addressing this assignment of error we also consider, though not raised by either party on appeal, whether the military judge's special findings indicate a variance between the acts the appellant was charged with, and the basis on which the military judge convicted him. Specifically, the appellant was charged with committing sexual contact "by placing [LCpl MS] in fear that, through the use or abuse of military position, rank, or authority, he would affect her military career" and committing a sexual act "by placing [LCpl MS] in fear that, through the use or abuse of military position, rank, or authority, he would affect her military career." Charge Sheet. However, while the military judge states that he found the appellant "did not expressly place [LCpl MS] in fear of him taking action that would affect her career," the context and circumstances surrounding the incident were such that LCpl MS was, in fact, fearful of what could happen to her and her military career if she resisted the appellant's sexual advances. This fear, combined with her oral protests allow this court to also find that "it was not reasonable for the [appellant] to have believed that [LCpl MS] was consenting." AE XLI.

When deciding this question we do not look simply at the cited language, but rather at the special findings as a whole. The cited language was confined to the final section of AE XLI setting forth the military judge's general findings relating to "the whole of the evidence." With the exception of the

---

[4] While the court understands that the Manual's listing of LIOs is purely guidance, *Jones*, 68 M.J. at 465, we nonetheless find that guidance significant for the purpose of providing notice.

introductory section, all of the other sections were directed at specific specifications and with respect to Additional Charge I and its specifications said the touchings were "offensive to [LCpl MS] as evidenced by her testimony that it was unwanted and offensive;" that the "contact was done with unlawful force and violence in that [LCpl MS] did not consent to the touching"; that she "told the accused 'no';" that the "circumstances surrounding the [touchings] were such that it was not reasonable for the [appellant] to have believed that [LCpl MS] was consenting;" that "[s]he was crying"; and that she "indicated that she was married and that she did not want to engage in sexual [touching]."  AE XLI.  When read together, we find that the cited language does not indicate an impermissible variance, but rather is merely a listing of additional factors that also indicate that LCpl MS was motivated by fear.  Such a listing does not negate the military judge's finding that there was ample evidence to prove, beyond a reasonable doubt, that LCpl MS was afraid the appellant would "affect her military career," as charged.  Having carefully reviewed the record, we are also convinced beyond a reasonable doubt that while the appellant "did not expressly place LCpl {MS} in fear of him taking action that would affect her career if she did not consent or threaten her," he "pressured her in an unrelenting manner" and  made LCpl MS fearful that the appellant's status as an SNCO would enable him to use his rank and authority to have her punished for drinking against her doctor's orders and withhold further processing of her medical paperwork if she did not comply with his repeated requests for sexual favors.  This fear precluded her consent.  Accordingly, we find this issue to be without merit.

**Legal and Factual Sufficiency**

The second assignment of error claims that the findings of guilt to communicating indecent language and assault consummated by a battery are legally and factually insufficient.  In accordance with Article 66(c), UCMJ, we review issues of legal and factual sufficiency *de novo*.  *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).  The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the Government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt."  *United States v. Dobson*, 63 M.J. 1, 21 (C.A.A.F. 2006) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  When testing for legal sufficiency, this court must draw every reasonable inference from the record in favor of the

11

prosecution.  *United States v. McGinty,* 38 M.J. 131, 132 (C.M.A. 1993); *United States v. Blocker,* 32 M.J. 281, 284 (C.M.A. 1991).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of [this court] are themselves convinced of the accused's guilt beyond a reasonable doubt."  *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).  Proof beyond a reasonable doubt does not mean that the evidence must be free of conflict.  *United States v. Goode*, 54 M.J. 836, 841 (N.M.Ct.Crim.App. 2001).

In this case, the evidence of the appellant's guilt with regard to indecent language is clear.  The appellant orally communicated certain language to LCpl MS, as evidenced through LCpl MS's testimony that the appellant approached her from behind and then said "I just jizzed (sic) on myself."  Record at 199.  The language was indecent in that it referred to sexual conduct; it was unwelcomed, vulgar, and offensive; and it took place near LCpl MS's workplace while at least one of them was in uniform.  Under the circumstances, the appellant's language was prejudicial to good order and discipline because it was made by a married SNCO to a married junior Marine.

On the Article 128 specifications, the Government presented testimonial evidence from LCpl MS and the audio recording she made of the incident with the appellant.  The audio showed that LCpl MS was scared and crying, that she reminded the appellant she was married, she repeatedly told him "no," and tried to push the appellant away multiple times.  Moreover, although the military judge found that the appellant "did not expressly place [LCpl MS] in fear of him taking action that would affect her career," the circumstances surrounding the incident were such that "it was not reasonable for the [appellant] to have believed that [LCpl MS] was consenting."  AE XLI.

After carefully reviewing the record of trial and considering the evidence in the light most favorable to the Government, we are convinced that a reasonable fact-finder could have found all the essential elements to both indecent language and assault consummated by a battery beyond a reasonable doubt. Furthermore, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are ourselves convinced beyond a reasonable doubt of the appellant's guilt.

## Unreasonable Multiplication of Charges

We review a military judge's decision to deny relief for an unreasonable multiplication of charges under an abuse of discretion standard. *United States v. Campbell*, 71 M.J. 19, 22 (C.A.A.F. 2012). A military judge abuses his discretion "when he is incorrect about the applicable law, or when he improperly applies the law." *United States v. Roberts*, 59 M.J. 323, 326 (C.A.A.F. 2004). The five-factor framework for analyzing unreasonable multiplication of charges is provided by the following questions:

> (1) did the accused object at trial that there was an unreasonable multiplication of charges;
>
> (2) is each charge and specification aimed at distinctly separate criminal acts;
>
> (3) does the number of charges and specifications misrepresent or exaggerate the appellant's criminality;
>
> (4) does the number of charges and specifications unreasonably increase the appellant's punitive exposure; and,
>
> (5) is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*United States v. Quiroz*, 55 M.J. 334, 338-39 (C.A.A.F. 2001).

When presented with the appellant's request to merge six specifications and two charges, the military judge responded with the following:

> I've had a chance to deliberate on the motion from the defense and make the following findings and conclusions. With regard to merger of the 128 offenses, I find that each specification is aimed at a distinct act separated by time, discussion between the accused and the complaining witness, location of some of the specifications, and protests by the complaining witness.
>
> I do not see this as an exaggeration of criminality of the accused or of prosecutorial overreaching. Although the acts occur over a fairly short time span, there is time and was time for reflection between each act. I further note that since this is an [sic], not a member's trials, the

13

Court stands in a much better position to recognize the sentencing implications of multiple charges occurring over a short timeframe.  Accordingly, I will not merge the Article 128 specifications.

With regard to merging Specifications 1 and 2 of Charge I, I find that each specification is aimed at a distinct statutory goal.  Sexual harassment protects against workplace conduct while fraternization guards against improper senior-subordinate relationships among other reasons.  I again note that the Court can and will take into consideration the overlapping conduct in both specifications.  The test is not that any multiplication of charges is wrong, but that an unreasonable multiplication of charges is prohibited.

Record at 325.

Based on the appellant's objection above, there is no dispute that the first *Quiroz* criterion favors the appellant. As to the remaining criteria, we are in agreement with the trial judge.  With the second criterion in particular, it is possible to have distinct and discrete acts occur throughout the course of a single evening and a single location.  *United States v. Paxton,* 64 M.J. 484, 490-91 (C.A.A.F. 2007).[5]  Accordingly, we find that the military judge did not abuse his discretion by determining that there was not an unreasonable multiplication of charges, and we find this assignment of error to be without merit.

### Sentence Appropriateness

The appellant argues that his sentence to three years' confinement, reduction to pay grade E-1, and a bad-conduct discharge was inappropriately severe.  In accordance with Article 66(c), UCMJ, a Court of Criminal Appeals "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved."  Sentence appropriateness involves the judicial

---

[5] In *Paxton*, a father proceeded from watching his daughter in the bathroom, to tucking her into bed, to touching her breasts, to penetrating her digitally, to having her perform oral sodomy, to ultimately raping her.  64 M.J. at 490-91.  Between each sexual act, the daughter protested and the course of events all occurred in the same evening and in the same location.  *Id.* at 490.  The court found that each of the sexual acts served as a legitimate basis for a separate charge and was not an unreasonable multiplication of charges.  *Id.* at 491.

14

function of assuring that justice is done and that the accused gets the punishment he deserves. *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)).

While we have a great deal of discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999).

After review of the entire record, we find that the sentence is appropriate for this offender and his offenses. The appellant sought and obtained sexual favors from a vulnerable subordinate Marine who was facing medical and possible disciplinary issues. A married Marine with over 10 years of active duty service, the appellant's actions failed to comply with the expectations of a senior enlisted Marine leader, and his behavior reflected great discredit upon the service. Consequently, we conclude that granting sentence relief at this point would be to engage in clemency, a prerogative reserved for the convening authority.

### Conclusion

The findings and the sentence as approved by the CA are affirmed.

Senior Judge MCFARLANE and Judge HOLIFIELD concur.

For the Court

R.H. TROIDL
Clerk of Court

15