UNITED STATES, Appellee

v.

Kevin E. PAXTON, Technical Sergeant
U.S. Air Force, Appellant

No. 06-0695

Crim. App. No. 36092

United States Court of Appeals for the Armed Forces

Argued January 16, 2007

Decided April 26, 2007

ERDMANN, J., delivered the opinion of the court, in which BAKER, STUCKY, and RYAN, JJ., joined. EFFRON, C.J., filed a separate opinion concurring in part and dissenting in part.

Counsel

For Appellant: James A. Hernandez, Esq. (argued); Lieutenant Colonel Mark R. Strickland and Major John N. Page III (on brief).

For Appellee: Captain Jefferson E. McBride (argued); Colonel Gerald R. Bruce and Lieutenant Colonel Robert V. Combs (on brief).

Military Judge: William. M. Burd

**This opinion is subject to revision before final publication.**

Judge ERDMANN delivered the opinion of the court.

Technical Sergeant Kevin E. Paxton was convicted by members at a general court-martial of rape, forcible sodomy, taking indecent liberties, committing indecent acts, and communicating indecent language, all with a person under age sixteen.  He was also convicted of wrongfully providing alcohol to a minor, wrongful and knowing possession of child pornography, and incest.  This conduct was in violation of Articles 120, 125, and 134, UCMJ, 10 U.S.C. §§ 920, 925, 934 (2000).  Paxton was sentenced to a dishonorable discharge, confinement for twenty-six years, forfeiture of all pay and allowances, and reduction to E-5.  The convening authority approved the sentence and the United States Air Force Court of Criminal Appeals affirmed the findings and sentence.  United States v. Paxton, No. ACM 36092, 2006 CCA LEXIS 100, 2006 WL 1144213 (A.F. Ct. Crim. App. Apr. 18, 2006) (unpublished).

We granted review of three issues:  (1) whether trial counsel's sentencing argument improperly commented on Paxton's exercise of his rights to plead not guilty and to remain silent during the trial; (2) whether Paxton received ineffective assistance of counsel; and (3) whether the indecent acts offenses charged against Paxton were multiplicious for sentencing with the rape offense or whether there was an

unreasonable multiplication of charges.  We affirm the decision of the Air Force Court of Criminal Appeals.

Paxton was convicted contrary to his pleas of several sexual offenses against his twelve-year-old daughter, including touching her breasts and genitals, forcible sodomy, rape, and incest.  Paxton was also convicted of giving his daughter alcohol and showing her pornography.  Other facts relevant to the disposition of the issues are set forth in the discussion of the individual issues.

## Issue I

### Trial Counsel's Argument on Sentencing

The prosecution may not comment on an accused's lack of remorse or on his recalcitrance in refusing to admit guilt after findings unless there is testimony from the accused, an unsworn statement, or other evidence properly before the court members to support the comment.  United States v. Edwards, 35 M.J. 351, 355 (C.M.A. 1992).  The comment may not be drawn from an accused's decision not to testify or from his pleas of not guilty.  Id.  We granted this issue to address whether trial counsel's argument on sentencing wrongfully commented on Paxton's exercise of his right to plead not guilty or to remain silent during sentencing.

A.  Background

Paxton did not testify prior to findings or at sentencing, nor did he submit an unsworn statement.  At sentencing, Paxton presented the testimony of a clinical psychologist, Lieutenant Colonel Jay Michael Stone.  Dr. Stone evaluated Paxton over a three-day period before trial.  He spent nine hours clinically interviewing him and administered a battery of tests, including the Minnesota Multiphasic Personality Inventory (MMPI).  On cross-examination, Dr. Stone testified that Paxton's test results showed, among other things, that Paxton had an inability or unwillingness to disclose personal information, that he engaged in "impression management" to present himself more favorably, that he believed other people were largely responsible for his problems, and that he has a lack of initiative and an avoidance of adult forms of autonomy.

While addressing rehabilitation potential in his sentencing argument, trial counsel stated as follows:

> You have to look at this individual and see that he
> really is a worthy candidate for rehabilitation.  The
> MMPI tells you that he was trying to fake himself
> looking better . . . . The test he was taking for you
> to know more about him, he is trying to bamboozle you.
> He doesn't want you to know what kind of person he
> really is, the child rapist, the child pornography,
> that's the kind of person he is.  It also tells you he
> is unwilling and has an inability to accept
> responsibility and to disclose personal information.
> He needs severe punishment and long-term treatment to
> make sure he is never going to do this again.
> Rehabilitation, as we know it, the doctor told us, we
> have long-term treatment facilities in our military

> disciplinary barracks.  He needs to be there.  We know it is going to take him a while, because he won't admit what he has done.  He won't admit it to his doctor.  He won't admit it to himself and until he admits it, he can't even get into the treatment.  He has to volunteer to get into the treatment.  You saw all the other things from the doctor's testimony that shows he is the kind of person who is not going to be proactively seeking that out.  He has to get over that hurdle.  He has to be punished long-term to make sure that he gets treatment and that he never does this again.

There was no objection from defense counsel.

B.  Discussion

A sentencing argument by trial counsel which comments upon an accused's exercise of his or her constitutionally protected rights is "beyond the bounds of fair comment."  United States v. Johnson, 1 M.J. 213, 215 (C.M.A. 1975) (emphasis omitted).  However, an accused's refusal to admit guilt after findings may be an appropriate factor for the member's consideration in their sentencing deliberation on rehabilitation potential but only if a proper foundation has been laid.  Edwards, 35 M.J. at 355.  "As a general rule, the predicate foundation is that an accused has either testified or has made an unsworn statement and has either expressed no remorse or his expression of remorse can be arguably construed as being shallow, artificial, or contrived."  Id.  Other evidence in the record may also give rise to the inference that an accused is not remorseful, but the inference may not be drawn from his decision not to testify or from his pleas of not guilty.  Id.

5

United States v. Paxton, No. 06-0695/AF

Paxton contends that the referenced portion of trial counsel's argument amounts to improper comment on his rights to plead not guilty and to remain silent at sentencing. The Government asserts that trial counsel's argument was a proper response to Dr. Stone's testimony. As Paxton did not object to the sentencing argument at trial, he must establish plain error to prevail on appeal. United States v. Haney, 64 M.J. 101, 105 (C.A.A.F. 2006) (citing United States v. Fletcher, 62 M.J. 175, 179 (C.A.A.F. 2005)). To establish plain error, Paxton must demonstrate: (1) that there was error, (2) that the error was plain or obvious, and (3) that the error materially prejudiced a substantial right. Id.

While Paxton did not testify or give an unsworn statement he did have Dr. Stone testify as to the results of his psychological testing. Considering trial counsel's remarks in context, we have no difficulty in concluding that this portion of his argument was based on the testimony of Dr. Stone and not on Paxton's decisions to plead not guilty or to remain silent during sentencing. Although trial counsel sought to draw the inference that Paxton was unwilling to accept responsibility or admit what he had done, he did not do so by commenting on Paxton's decision to exercise these rights. In this regard, there was no error.

We nevertheless note our concern regarding trial counsel's statement that "he won't admit what he has done.  He won't admit it to his doctor.  He won't admit it to himself . . . ."  Dr. Stone testified as to the results of psychological tests that he administered and did not testify as to any statement that Paxton may have made in response to these specific offenses.  "This Court has consistently cautioned counsel to limit arguments on findings or sentencing to evidence in the record and to such fair inferences as may be drawn there from."  United States v. White, 36 M.J. 306, 308 (C.M.A. 1993) (citations and quotation marks omitted).  To the extent the argument went beyond the facts established in the record or failed to make clear that counsel was calling for an inference reasonably drawn from the evidence, it would constitute error.  However, even if there was error here, Paxton has failed to establish that it was plain and obvious.

Issue II

Ineffective Assistance of Counsel

Paxton argues that trial defense counsel was ineffective in the following areas:  (1) failing to object to trial counsel's rebuttal argument on findings; (2) failing to object to trial counsel's sentencing argument; (3) advising Paxton to remain silent during sentencing; and (4) failing to call Paxton's wife or former wife to testify at sentencing.  We are guided by the

7

test set forth by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  <u>See</u> <u>United States v. Edmond</u>, 63 M.J. 343, 345 (C.A.A.F. 2006).  Under the two-pronged test of <u>Strickland</u>, Paxton first "must show that counsel's performance fell below an objective standard of reasonableness -- that counsel was not functioning as counsel within the meaning of the Sixth Amendment."  <u>Id.</u> at 351 (citation and quotation marks omitted).  Second, Paxton "must demonstrate that there is a reasonable probability that, but for counsel's error, there would have been a different result."  <u>Id.</u> (citation and quotation marks omitted).

Ineffective assistance of counsel involves a mixed question of law and fact.  <u>United States v. Davis</u>, 60 M.J. 469, 473 (C.A.A.F. 2005) (citation omitted).  We review factual findings under a clearly erroneous standard, but we apply a de novo standard of review to the ultimate determination of whether an appellant received ineffective assistance of counsel and whether there was prejudice.  <u>Id.</u> (citations omitted).  "Our review of counsel's performance is highly deferential and is buttressed by a strong presumption that counsel provided adequate professional service."  <u>Edmond</u>, 63 M.J. at 351 (citation omitted).  We address in turn each allegation of ineffective assistance.

(1)  Failure to object to the findings argument in rebuttal

In closing argument on findings, defense counsel asserted as follows:

> Now you also have the testimony of -- the pictures that we spoke of earlier that [BCP] identified as what was on the computer.  She says she was shown these images to pick out which ones she saw on the computer, so essentially, what Sergeant Paxton is charged with is showing [BCP] pornography and that is exactly what [BCP] did in preparation for this trial.

In rebuttal, trial counsel responded:  "To assert that what the government had to do to get this child ready to come in here and testify in this criminal proceeding is the same as what the accused is charged with is repulsive and disingenuous."  Paxton argues that trial counsel's statement was a personal attack upon him and his defense counsel.  The Government responds that the statement was a fair comment in response to defense counsel's argument on findings and that an objection would have further highlighted a weakness in the defense's case.

We believe that equating the offense of "indecent acts" (Paxton showing pornographic pictures to his twelve-year-old daughter) to appropriate trial preparation is a questionable tactic that is clearly subject to proper rebuttal by the Government.  While we agree with the Court of Criminal Appeals' apt description of trial counsel's remarks as "somewhat intemperate", we do not regard the failure to object to the remarks as conduct that falls below an objective standard of

9

reasonableness nor do we believe an objection in these circumstances would have impacted the trial's result. Paxton, 2006 CCA LLEXIS 100, at *4, 2006 WL 1144213, at *2.[1]

(2) Failure to object to sentencing argument

We considered the issue underlying this ineffective assistance of counsel claim in our discussion of Issue I where we addressed whether trial counsel's sentencing argument improperly commented upon Paxton's exercise of his rights to plead not guilty and to remain silent. In this context, Paxton asserts that defense counsel's failure to object to that argument constitutes ineffective assistance of counsel. In our disposition of Issue I, we determined that trial counsel did not improperly comment upon Paxton's exercise of his rights to plead not guilty or to remain silent. To the extent that trial counsel's arguments misstated the evidence, we determined that if there was error, it was neither plain nor obvious. Consequently, defense counsel's failure to object to those comments does not constitute ineffective assistance of counsel.

(3) Advising Paxton to remain silent during sentencing

Paxton contends that his trial defense team was ineffective when it advised him not to give an unsworn statement. He argues

---

[1] The Court of Criminal Appeals was addressing the underlying issue of whether trial counsel's remarks constituted plain error and held that they did not. United States v. Paxton, No. ACM 36092, 2006 CCA LEXIS 100, at *4-*5, 2006 WL 1144213, at *2

10

that if he presented his history, upbringing, duty performance, and other matters in mitigation, such as his love of the Air Force, the court-martial members would have adjudged less confinement. In response, the Government points to the affidavit of two Air Force attorneys who represented Paxton at trial. Paxton's trial counsels stated that they advised Paxton against submitting an unsworn statement because they observed the mood of the court-martial members and believed that if he gave a statement without taking full responsibility for his crimes and apologizing for them, he would further alienate the members.

Our consideration of the record compels the conclusion that the advice of defense counsels did not amount to ineffective assistance of counsel. "As a general matter, [t]his Court will not second-guess the strategic or tactical decisions made at trial by defense counsel." United States v. Perez, 64 M.J. 239, 243 (C.A.A.F. 2006) (citations and quotation marks omitted). As the Government asserts, the affidavit of trial defense counsel provides a sound tactical basis to explain why they advised him not to submit an unsworn statement.

(4) Failure to call Paxton's wife and former wife

Paxton asserts that his wife and former wife should have been called to testify during findings. He argues that their

(A.F. Ct. Crim. App. Apr. 18, 2006) (unpublished). That issue

11

testimony was critical in certain respects to adequately establish a theory of defense. The affidavit of trial defense counsel explains the tactical reasons behind counsel's decisions not to call these women as witnesses.

Defense counsel reasoned that testimony from Paxton's current wife would have had more disadvantages than advantages. They considered her credibility before the members questionable at best. Due to her youthful appearance, her background, and certain aspects of her relationship with Paxton, they believed that her testimony could have instilled in the members a sense that Paxton was a man of questionable morals who took an interest in younger women. Of similar concern, his former wife was hostile to defense counsel and to Paxton. Trial defense counsel considered her unstable and unpredictable and they believed that she could have said any number of things detrimental to Paxton if put on the stand, including allegations that he abused her emotionally and physically.

Defense counsel's affidavit provides a sound tactical basis to justify the course taken at trial. We find no basis on which to conclude this course was unreasonable and will not second-guess this trial strategy. Perez, 64 M.J. at 243. Paxton has failed to establish that he was denied effective assistance of counsel.

---

is not before us under this grant of review.

12

## Issue III

### Multiplicity or Unreasonable Multiplication of Charges

"Multiplicity and unreasonable multiplication of charges are two distinct concepts." United States v. Roderick, 62 M.J. 425, 433 (C.A.A.F. 2006) (citing United States v. Quiroz, 55 M.J. 334, 337 (C.A.A.F. 2001)). Multiplicity, a constitutional violation under the Double Jeopardy Clause, occurs if a court, "contrary to the intent of Congress, imposes multiple convictions and punishments under different statutes for the same act or course of conduct." United States v. Teters, 37 M.J. 370, 373 (C.M.A. 1993). Even if offenses are not multiplicious as a matter of law with respect to double jeopardy concerns, the prohibition against unreasonable multiplication of charges allows courts-martial and reviewing authorities to address prosecutorial overreaching by imposing a standard of reasonableness. Roderick, 62 M.J. at 433. We granted review of this issue to address whether the charges of the 'indecent acts' offenses are multiplicious for sentencing with the rape charge or whether there was an unreasonable multiplication of charges.

A. Background

Paxton was convicted of committing indecent acts by touching his daughter's breasts and genital area with the intent to gratify his sexual desires. He was also convicted of sodomy and rape. The offensive conduct underlying these specific

13

charges took place on the same evening.  As recounted by the testimony of the victim, the offending conduct occurred as follows:  Paxton watched his daughter urinate and then wanted to tuck her into bed.  He sat at the end of her bed and asked her if she wanted him to take her virginity.  She said no.  After "a while" he asked if he could touch her breasts.  After touching her breasts, he asked if she would like him to finger her.  She said no, but he put his finger into her vagina.  Then he told her that he would teach her to do "blowjobs" and "hand jobs" and asked her to give him a "blowjob."  She had her mouth on his penis for a few seconds.  Then he asked for a "hand job" and she put her hands on his penis.  After that, he took off his shirt, got on top of her and put his penis inside her vagina.

At the outset of trial court proceedings, defense counsel moved for dismissal of several specifications due to multiplicity and unreasonable multiplication of charges.  The military judge found that "all of the charges and specification in this case . . . allege distinct acts, criminal acts that are not multiplicious for findings and do not constitute 'piling on'" and denied the motion.  Prior to sentencing, defense counsel argued that the rape charge, the sodomy charge, and the specifications for indecent acts, indecent language and incest all arise from one transaction and should be found multiplicious for sentencing purposes.  The military judge granted the motion

as to the rape and incest charges, but denied it as to the others.

B. Discussion

    (1) Multiplicity

The primary question raised by this issue is whether the indecent acts committed by Paxton and the rape amount to the "same act or course of conduct" or whether they are distinct and discrete acts, allowing separate convictions. Teters, 37 M.J. at 373; see also United States v. Neblock, 45 M.J. 191, 197 (C.A.A.F. 1996) (recognizing that if it is "a distinct or discrete-act offense, separate convictions are allowed in accordance with the number of discrete acts"). This court reviews claims of multiplicity de novo. Roderick, 62 M.J. at 431.

Paxton contends that this case involves just a single transaction where the indecent acts occurred in the course of Appellant's positioning himself to commit the charged rape. The Government contends that the indecent acts each involved a distinct course of conduct separate from the rape. The Government points out that touching his daughter's breasts and digitally penetrating her vagina were not used to establish any elements of the rape charge, and the crime of sodomy separated the indecent acts and the rape.

Under the facts of this case, we conclude that the conduct involved several distinct acts.  The acts of touching his daughter's breast and genitals were discrete acts separate from each other and separate from the rape, just as the conduct underlying the sodomy charge was a separate and discrete act.  See Neblock, 45 M.J. at 196.  Accordingly, we hold that the indecent act offenses and rape are not multiplicious as a matter of law.

(2)  Unreasonable multiplication of charges

In addressing whether the Government has unreasonably multiplied charges, this court applies a five-part test:  (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications? (2) Is each charge and specification aimed at distinctly separate criminal acts? (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality? (4) Does the number of charges and specifications unreasonably increase the appellant's punitive exposure? (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?  United States v. Pauling, 60 M.J. 91, 95 (C.A.A.F. 2004) (citing Quiroz, 55 M.J. at 338).

The first criterion is resolved in Paxton's favor.  At trial, Paxton moved to dismiss specifications on two occasions, once for findings and once for sentencing.  It is, however, the

16

only criterion resolved in Paxton's favor.  Each of the others tends to show that there was no prosecutorial overreaching.

We addressed the second criterion when we considered Paxton's claim of multiplicity and concluded that the acts at issue were distinct.  As to the third criterion, we agree with the military judge that this case does not involve the "piling on" of charges but reflects charges for distinct criminal conduct.  Nor can Paxton meet the fourth criterion.  The indecent act specifications have no effect on Paxton's punitive exposure because rape carries with it a potential maximum sentence of death.  Manual for Courts-Martial, United States pt. IV, para. 45.e.(1) (2005 ed.) (MCM).  Conviction for rape of a child also exposes Paxton to confinement for life without the possibility of parole, a dishonorable or bad-conduct discharge, and forfeitures of all pay and allowances.  See MCM, Maximum Punishment Chart app. 12 at A12-3.  The punitive exposure is at capacity for the offense of rape alone and could not be increased by the convictions for indecent acts.  As to the fifth criterion, we find no evidence in this record of prosecutorial overreaching or abuse in drafting the charges, and Paxton points to nothing in this regard.  We conclude that there was no unreasonable multiplication of charges.

17

United States v. Paxton, No. 06-0695/AF

Decision

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

United States v. Paxton, 06-0695/AF

EFFRON, Chief Judge (concurring in part and dissenting in part):

Trial counsel's sentencing argument provided the members with an erroneous portrayal of the evidence of record. Trial counsel compounded his misstatement of facts by making an argument that encouraged the members to draw adverse inferences from Appellant's exercise of his right to plead not guilty and his right to remain silent. I respectfully dissent from the portion of the majority opinion that concludes that any error in trial counsel's argument was not plain or obvious.

The errors occurred during trial counsel's attempt to describe the evidence and responsibilities of the panel during sentencing. At this point in the trial -- the closing argument on sentencing -- the prosecution had the opportunity to provide carefully prepared remarks. We are not dealing here with a stray comment spontaneously offered during an interactive exchange with opposing counsel, the military judge, or a witness. Trial counsel's repeated assertion that Appellant "won't admit" that he committed the charged offenses constituted plain error, warranting relief.

As noted in the majority opinion, the prosecution may not comment in sentencing argument upon an accused's exercise of his or her constitutionally protected rights. United States v. Johnson, 1 M.J. 213, 215 (C.M.A. 1975). Nonetheless, an

accused's refusal to admit guilt after findings may be considered by the members in deliberations on rehabilitative potential, as long as a proper foundation has been laid for the argument.  United States v. Edwards, 35 M.J. 351, 355 (C.M.A. 1992).  The foundation may consist of testimony or an unsworn statement by the accused in which no remorse is expressed, or the expression is arguably "shallow, artificial, or contrived."  Id.  Other evidence in the record also may provide a foundation, but an argument based upon an accused's recalcitrance to admit guilt or express remorse may not be drawn from the decision not to testify or to plead guilty.  Id.

Here, there was no foundation for trial counsel's comments.  Appellant did not testify.  He did not submit an unsworn statement at sentencing.  The defense witness, Dr. Stone, did not testify that Appellant refused to admit his offenses or that he expressed a lack of remorse.  Indeed, the record contains no testimony from Dr. Stone recounting anything Appellant told him regarding admitting the offenses, taking responsibility for them, or feeling or lacking remorse.  Nor did trial counsel ask Dr. Stone whether Appellant admitted his offenses when trial counsel had the opportunity to do so during cross-examination.  There was no evidence in the record that Appellant refused to admit his guilt other than the two prohibited items upon which

the prosecution could not comment -- Appellant's decision not to testify and his decision to plead not guilty.

The prosecution, in its sentencing argument, mischaracterized the evidence about Appellant by stating: "[H]e won't admit what he has done. He won't admit it to his doctor. He won't admit it to himself and until he admits it, he can't even get into the treatment." Those words constitute the testimony of trial counsel, not the evidence presented by the witness, and this testimony was erroneously considered by the members during sentencing. See, e.g., United States v. White, 36 M.J. 306, 308 (C.M.A. 1993).

Following a finding of error, the plain error standard requires a determination of whether the error was plain or obvious and whether it materially prejudiced Appellant's substantial rights. See United States v. Haney, 64 M.J. 101, 105 (C.A.A.F. 2006) (citation omitted). The error was plain because there was no permissible evidence in the record from which to argue that Appellant "won't admit what he has done." Appellant did not testify and did not submit an unsworn statement. Dr. Stone, the source relied upon in trial counsel's sentencing argument, did not testify that Appellant had either admitted or failed to admit the charged offenses from Appellant. In the course of testifying about the results of psychological tests, Dr. Stone did not provide a factual basis for trial

3

counsel's erroneous statements about what Appellant did not say or do.

Trial counsel delivered a sentencing argument that prominently asserted Appellant's lack of rehabilitative potential. Trial counsel argued that Appellant should receive a longer sentence because he did not admit to committing the charged offenses: "He needs to be there [treatment facility]. We know it is going to take him a while, because he won't admit what he has done. He won't admit it to his doctor. He won't admit it to himself and until he admits it, he can't even get into the treatment." Significantly, the members gave Appellant a sentence that was six years longer than the sentence requested by trial counsel. In this context, we cannot be confident that the panel was not "substantially swayed" by the error in trial counsel's sentencing argument. United States v. Reyes, 63 M.J. 265, 267 (C.A.A.F. 2006) (citations and quotation marks omitted).

Under these circumstances, we should order a rehearing on the sentence. Accordingly, I respectfully dissent from the majority opinion's discussion of Issue I and Issue II, Part (2), both of which concern trial counsel's sentencing argument. I concur in the majority opinion with respect to the balance of Issue II (other allegations of ineffective assistance of

counsel) and Issue III (multiplicity and unreasonable

multiplication of charges).