# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
POND, MORRIS, and JUETTEN
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant TYRESE S. CAMPBELL**
**United States Army, Appellant**

ARMY 20230030

Headquarters, 1st Armored Division and Fort Bliss
Robert L. Shuck, Military Judge
Colonel Andrew D. Flor, Staff Judge Advocate

For Appellant: Captain Amber L. Bunch, JA (argued);[1] Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Robert W. Rodriguez, JA; Captain Kevin T. Todorow, JA (on brief and reply brief).

For Appellee: Captain Vy T. Nguyen, JA (argued); Colonel Christopher B. Burgess, JA; Major Chase C. Cleveland, JA; Major Joseph H. Lam, JA (on brief).

12 September 2025

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent*

POND, Senior Judge:

An enlisted panel, sitting as a general court martial, convicted appellant, contrary to his pleas, of one specification of domestic violence, in violation of Article 128b, Uniform Code of Military Justice, 10 U.S.C. § 928b [UCMJ] (2019). The military judge sentenced appellant to a bad-conduct discharge, 120 days of confinement, total forfeitures, and reduction to the grade of E-1. This case is now before this court for review under Article 66, UCMJ.

---

[1] We heard oral argument in this case on 30 January 2025 at the Sandra Day O'Conner College of Law at Arizona State University as part of "Project Outreach," a public awareness program demonstrating the operation of the military justice system.

Before this court, appellant raises three assignments of error: (1) that the evidence is factually insufficient; (2) that the military judge abused his discretion by admitting the victim's out of court statements as residual hearsay; and (3) that the prosecution (the trial counsel and special trial counsel) improperly commented on appellant's right to remain silent during closing and sentencing argument. The latter two assignments of error warrant discussion but no relief.[2]

## BACKGROUND

### A. The Assault

Appellant's wife, the victim, accused him of strangling her on several occasions, threatening her, and striking her with a shoe, the latter being the only offense of which appellant was found guilty. On 18 July 2022, appellant and his wife got into an argument which turned physical. During the altercation, appellant pushed the victim out of their apartment and locked the front door. The victim, who was standing barefoot in her nightwear, pounded on the door to get back inside to retrieve her shoes, her bag, and her passport. When appellant let the victim back inside the apartment, the fight continued. Appellant told the victim she "should lick his shoe." When she refused, appellant took his shoe and hit her in the mouth. The victim then grabbed her bag and left. The altercation occurred sometime around 0400.

After walking around the apartment complex, calling out to neighbors, the victim eventually called 911 at 0634 but hung up before speaking to an operator. The 911 operator called back twice before speaking with the victim, who sounded nervous, scared, and like she had been crying. During the call, the victim stated that she had been strangled, that appellant used his shoe to hit her in her mouth, and that her mouth was "burst up" and she did not know if it needed medical attention. Emergency medical services personnel responded and found the victim wandering the apartment complex parking lot with a bloody lip. The victim told them she had been choked and hit in the mouth with a shoe, which had caused a "burst lip."[3] The victim was transported to a hospital, where doctors and nurses treated her injuries, documenting them in her medical records. While lying in a hospital bed, the victim was interviewed by police officers from the El Paso Police Department who digitally recorded her statements on a body camera. The victim told police, in addition to

---

[2] We have given full and fair considerations to appellant's other assignment of error as well as those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they warrant neither discussion nor relief.

[3] One of the Emergency Medical Technicians (EMTs) interpreted "burst" as bleeding from her lip.

strangling her, the appellant hit her in the mouth with his shoe, which caused her pain and her mouth to bleed. She also stated she did nothing physical to appellant before the assault and screamed out to the neighbors. The police later interviewed appellant who admitted to hitting the victim during their fight but claimed it was in self-defense. The victim later recanted her allegations against appellant.

### B. Military Judge's Preliminary Rulings

Before trial, and based on the victim's recantations, the government provided notice of its intent to admit the victim's statements to police from the body camera footage as residual hearsay under Military Rule of Evidence [M.R.E.] 807.[4],[5] The defense opposed the motion. Separately, during pretrial litigation, the military judge determined some, but not all, of the victim's statements to the 911 operator were admissible as a then existing mental, emotional, or physical condition under M.R.E. 803(3).[6] Specifically, the military judge ruled the victim's statement that her "mouth was burst up" was admissible under the hearsay exception. The military judge, however, ruled the victim's statement that appellant "used his shoe and hit me in my mouth" was inadmissible as a then existing mental, emotional, or physical condition.

The government then moved for a preliminary ruling of admissibility for all the victim's statement from the 911 call as well as the victim's statements to police on the body camera footage as residual hearsay. The defense, again, opposed the government's motion, arguing the victim's statements failed to meet the requirements of M.R.E. 807 and requested that if the military judge did not deny the government motion, to withhold ruling until trial.[7] During litigation of the motion in

---

[4] For the statement to be admissible as residual hearsay, M.R.E. 807 requires the proponent to give an adverse party reasonable notice of the intent to offer the statement before trial.

[5] Unless stated otherwise, references to the Military Rules of Evidence and Rules for Courts-Martial are to those found in *Manual for Courts-Martial, United States* (2019 ed.).

[6] In its motions seeking a preliminary ruling of admissibility, the government disclaimed offering the victim's statements in the 911 call as an excited utterance or a present sense impression.

[7] The defense argued the government failed to show (1) the victim's statement possessed guarantees of trustworthiness because the victim later made other contradictory statements and (2) the government could not, through reasonable efforts, obtain more probative evidence for the points for which the evidence was offered such as eliciting the victim's testimony at trial as a subpoenaed witness.

an Article 39(a) session, the government stated the victim, who was subject to a subpoena, would appear but she was "wavering on what she will testify to when she takes the stand." Before trial commenced, the military judge ruled that the 911 call in its entirety and portions of the body camera footage would be admissible as residual hearsay, but the ruling was "conditional based on the uncooperative nature of the complaining witness in this case."

### C. Trial

During the government's opening statement, trial counsel told the panel, "You are going to hear that [the victim] calls 911. She reports being strangled. She reports being struck in the face." Additionally, "You are going to hear from the El Paso Police Department officers who interviewed her in the emergency room."

During the testimony of the government's first witness, the 911 operator, trial counsel moved to admit the 911 call, in its entirety, into evidence "pursuant to the court's preliminary ruling on the 807 motion." The defense stated, "No objection, Judge." And the military judge, "without objection," admitted the 911 call into evidence. As its third witness, the government called one of the El Paso police officers who interviewed the victim at the hospital. The government had not yet called or attempted to call the victim to the stand. During the testimony of the police officer, the government moved to admit the body camera footage of the victim's interview at the hospital "in accordance with the court's ruling." The defense again stated, "no objection," and without objection, the military judge admitted the exhibit into evidence.

As its seventh witness, the government called the victim who testified at length and in detail about her relationship with appellant and the charged offenses, to include the events of 18 July 2022 and appellant's striking her in the mouth with his shoe. The defense at no time before, during, or after the victim's testimony, made an objection to the previously admitted 911 call or body camera footage as residual hearsay.

### D. Government's Closing and Sentencing Arguments

During closing arguments, while using a powerpoint slide presentation which included the words, "[The Victim] is a Credible Witness" and "[Appellant's] Arguments are Not Credible," the trial counsel argued before the panel members:

> TC: And I submit to you that [the victim] could not have been more open and honest throughout this trial. She admitted when she was wrong. She admitted what she did. I don't think she lied to you once in here, members.

MJ: Panel members ----

TC: Excuse me, yes, I apologize.

MJ: Government cannot vouch for a witness's credibility. The government is just an advocate. They are not a witness.

TC: My apologies, Your Honor.

MJ: Please ignore that last comment.

A few moments later, using the same presentation,[8] trial counsel commented on the fact that appellant did not take the stand:

TC: So I told you why [the victim] is a credible witness . . . . I ask that you take special attention to that witness credibility instruction when you return to that deliberation room. So, the flip side of this is that [appellant] is not. Now he didn't testify, no comment on that.

CDC: Objection.

TC: He did not testify. That's okay.

MJ: Panel members, I provided you an instruction. There's a lot of problems with that first statement, that the accused was not a witness in this case. And the fact that he was not a witness must be completely disregarded by yourself. Do you understand that? Do all panel members understand that instruction?

[Affirmative response from all members.]

MJ: Apparently so.

TC: Your Honor ----

MJ: Move on from this slide.

CDC: Your Honor, I would like to move for a mistrial in this.

---

[8] In addition to a bullet point stating "[Appellant's] Arguments are Not Credible," the same slide of the powerpoint presentation stated, "Consider also the extent to which each witness is either supported or contradicted by other evidence."

TC:   Your Honor, I was referencing to the defense theories, not the witness himself. I apologize that came off the wrong way. I was referring to the theories, not the fact that he was a witness himself.

MJ:   Motion denied.

TC:   Members, I want to talk about the theories, the theories in this case, the theories you've been presented with . . . .

As part of the findings instructions, the military judge instructed the panel of the accused's right to remain silent, as requested by the defense, and advised the panel members of their duty not to draw any inference adverse to appellant from the fact that he did not testify. The panel returned findings acquitting appellant of all but one offense.

During the sentencing phase of the trial, after appellant provided an unsworn statement, the special trial counsel, while arguing for an appropriate sentence, stated he was seeking a higher sentence than previously planned:

> So, Your Honor, this is going to be a little frustrating for me because I was prepared to come before you this morning and ask for a specific sentence, a sentence less than the sentence I'm going to ask for me right now.

> So, where accountability meets self-improvement can justify mercy. Unfortunately, we have no accountability in this courtroom. And, unfortunately, we have no self-improvement in this courtroom. No evidence of it. The accused took an opportunity to give an unsworn statement, which is his absolute right to do. Everything he said was his choice. And the easiest thing, all he needed to say, all he needed to do –

ADC:   Objection, Your Honor.

The defense again moved for a mistrial arguing the prosecution's sentencing argument violated appellant's Fifth Amendment right by conditioning the government's recommended sentence on appellant's failure to take accountability during his unsworn statement, which could be used against appellant in state court. The military judge found the defense had laid a foundation that appellant faced potential liability from the state, as a separate sovereign, but after hearing arguments from both sides, the military judge ultimately agreed with the government's position:

[I]f the accused makes an unsworn statement in the case and the accused chooses not to exhibit remorse, that is enough of a foundation for which the government may then ask for an adverse inference. That's what the law is. But you can also, as you just indicated, you can also qualify that is a reason why the defense chose not to make that kind of apology for any remorse for that action.

The military judge then allowed the defense to reopen their case, in the middle of the government's sentencing argument, to admit appellant's anger management certificate of completion to rebut the prosecution's argument that appellant had not sought self-improvement.

The prosecution requested the military judge sentence appellant to a dishonorable discharge, twenty months of confinement, total forfeitures, and reduction to the grade of E-1. The defense requested seventy-five days of hard labor, reduction to the grade of E-4, and no confinement. The military judge sentenced appellant to a bad-conduct discharge, 120 days of confinement, total forfeitures, and reduction to the grade of E-1.

## LAW AND DISCUSSION

### *A. Residual Hearsay*

### *1. Applicable Law*

Hearsay is defined as an out of court statement offered into evidence to prove the truth of the matter asserted, and, as a general rule, is inadmissible in courts-martial. *United States v. Ayala*, 81 M.J. 25, 28 (C.A.A.F. 2021) (citing M.R.E. 801(c) and M.R.E. 802). As an exception, M.R.E. 807 "permits, in rare circumstances," the introduction of out of court statements as residual hearsay. *United States v. Czachorowski*, 66 M.J. 432, 435 (C.A.A.F. 2008); *see also United States v. Marchesano*, 67 M.J. 535, 546 (Army Ct. Crim. App. 2008) (stating the residual hearsay exception "should be used very rarely, and only in exceptional circumstances." (citations and internal quotation marks omitted)). Under M.R.E. 807, an out of court statement may only be admissible under the residual hearsay exception if the following conditions are met:

(1) the statement has equivalent circumstantial guarantees of trustworthiness;

(2) it is offered as evidence of a material fact;

(3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and

(4) admitting it will best serve the purposes of these rules and the interests of justice.

For the rule's third requirement—that the statement be more probative than other reasonably attainable evidence—courts have inquired into the declarant's availability. *See e.g., United States v. Giambra,* 33 M.J. 331, 334 (C.A.A.F. 1991) ("What could be more probative on the point of the assault than the victim's own testimony that she was assaulted?"). And in certain instances where a victim has recanted and/or testified for the defense, courts have found no error in allowing the government to introduce the victim's out of court statements at trial under the residual hearsay exception. *United States v. Haner,* 49 M.J. 72, 77-78 (C.A.A.F. 1998) (finding no error to admit victim's statement to law enforcement as residual hearsay where she recanted and testified for defense); *United States v. Zimmer,* 2023 CCA LEXIS 1 (Army Ct. Crim. App., 4 Jan. 2023) (where victim recanted, finding no error to admit victim's out of court statement, which was the only evidence against appellant).

Courts, however, have required more than "a trial counsel's bare assertion of a declarant's unavailability" to meet the burden of admissibility under M.R.E. 807. *Czachorowski,* 66 M.J. at 436. "A trial judge, then, cannot take it for granted that a declarant of any age is unavailable or forgetful, and then admit hearsay testimony under the residual exception instead. Absent personal observation or a hearing, some specific evidence of reasonable efforts to obtain other probative evidence is still required" by the rule. *Id.* (finding error where the military judge relied upon the trial counsel's bare, uncorroborated assertion that the victim was unavailable to testify).

This court reviews a military judge's ruling to admit evidence for an abuse of discretion. *United States v. Smith,* 83 M.J. 350, 355 (C.A.A.F. 2023). But if the defense fails to object to the admission of evidence at trial, courts "first must determine whether the appellant waived or forfeited the objection." *United States v. Jones,* 78 M.J. 37, 44 (C.A.A.F. 2018). "If the appellant waived the objection, then we may not review it at all. But if the appellant merely forfeited the objection, then we may review the objection for plain error." *Id.* (citations omitted); *see also*

M.R.E. 103(f).[9] To prevail under a plain error framework, appellant bears the burden to show (1) there was error; (2) the error was clear or obvious; and (3) the error materially prejudiced appellant's substantial rights. *Smith*, 83 M.J. at 355.

A motion *in limine* does not always "preserve an issue for appellate review absent further objection." *United States v. Dollente*, 45 M.J. 234, 240 (C.A.A.F. 1996). That is because motions in *limine* often raise "hypothetical concerns" that may not come to fruition during trial. *Id.* Accordingly, "parties must re-raise objections with particularity when the issue becomes ripe." *Id.* (citations and internal quotation marks omitted). If, however, the motion *in limine* addresses an issue "that can be and is definitely ruled upon in a pretrial hearing," then the motion may preserve the issue on appeal without a renewed objection at trial. *Id.* (quoting *United States v. Mejia-Alarcon*, 995 F.2d 982, 987-88 (10th Cir. 1993)).

To determine whether a motion *in limine* requires a renewed objection to preserve the issue on appeal, the court in *Dollente* adopted a three-part test:

> (1) whether the matter was adequately presented to the trial court;
>
> (2) whether the issue is of the type that can be finally decided in a pretrial hearing, such as a decision to admit evidence which is not dependent on other evidence admitted at trial; and
>
> (3) whether the court's ruling was definitive.

*Id.* (quoting *Mejia-Alarcon*, 995 F.2d at 987-88). If the answer to each of these questions is no, then it is incumbent upon the defense to re-raise the objection to preserve the issue on appeal. *Id.* at 240-241.

### 2. Discussion

Applying *Dollente*'s three-part test, we find appellant was required to renew his objection. While the residual hearsay issue was adequately presented to the military judge, the other two parts of the test were not met. Defense's motion to exclude the victim's statements could not be finally decided in a pretrial hearing because the legal issue hinged on the victim being uncooperative at trial. For that

---

[9] M.R.E. 103(f) allows this court to recognize evidentiary "plain errors that materially prejudice an accused's substantial rights even though defense counsel has failed to make a timely objection." *United States v. Campos*, 67 M.J. 330, 332 n.2 (C.A.A.F. 2009) (citing M.R.E. 103(d) which was subsequently restyled as M.R.E. 103(f)).

same reason, the military judge's ruling was expressly conditioned on the victim's testimony at trial and was not definitive. Thus, it was incumbent upon the defense to renew their objection to the admission of the 911 call and the body camera footage when trial counsel moved to admit them into evidence, because the condition of the military judge's ruling—the victim being uncooperative—had not yet been met. Rather than re-raising the objection with particularity, however, the defense instead replied it had no objection. The question before us is whether this constituted waiver.

Waiver can occur either by operation of law or by the intentional relinquishment of a known right. *Compare United States v. Swift*, 76 M.J. 210, 217-18 (C.A.A.F. 2017) (holding failure to make a motion to suppress a confession before arraignment was waived under the rules for courts-martial) *with United States v. Rich*, 79 M.J. 472, 476 (C.A.A.F. 2020) (finding appellant's affirmative declination to object to instructions after repeated discussions with the military judge constituted waiver).[10] Because there is no waiver by operation of law, we must consider whether the defense's "no objection" to the two prosecution exhibits was an intentional relinquishment of a known right.

Here, defense in this case did not merely fail to object but affirmatively stated "no objection" to both prosecution exhibits when the condition of the military judge's preliminary ruling had not yet been met. Our superior court has found waiver in similar cases where defense not only failed to object but affirmatively stated "no objection." *See e.g., Rich*, 79 M.J. at 476; *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (finding waiver where defense counsel's affirmative declination to object or offer additional instructions "expressly and unequivocally" acquiesced to the proposed instructions); *United States v. Cook*, ___ M.J.___, 2025 CAAF LEXIS 726, at *17 (C.A.A.F. Aug. 28, 2025) ("Appellant's defense counsel not only failed to object to the maximum punishment calculation, at multiple points he affirmatively agreed with the proposed calculation adopted by the military judge."). Unlike those cases, the defense in this case filed a motion *in limine* to exclude the objected to evidence before trial, lodging an initial objection before trial. The military judge's ruling, however, was not final and the defense had an obligation to renew its objection. *Cf. Dollente*, 45 M.J. at 240 (finding no waiver where appellant clearly satisfied the three-part test and was not required to object again after making a motion *in limine*). Thus, defense's affirmative "no objection" to the victim's statements in this case suggests waiver.

---

[10] Rule for Courts-Martial 801(g) provides that unless the applicable rule in the Manual provides that a failure to raise a defense, objection, request, or motion constitutes waiver, such failure shall constitute forfeiture. For example, M.R.E. 311(d)(2)(A) provides that failure to make any motion to suppress or objection to evidence obtained from unlawful searches and seizures "constitutes a waiver of the motion or objection."

Two things give us pause. First, the government moved for admission of both pieces of evidence "pursuant to the court's preliminary ruling." In light of the wording of the ruling, trial counsel's statement suggests the government was attesting to the victim's unwillingness to cooperate. A trial counsel's bare assertion of unavailability, however, is insufficient to satisfy the threshold for admissibility under M.R.E. 807. When faced with the trial counsel's ambiguous statement, the defense, when asked, was obligated to object again. Second, after successfully seeking the admission of both pieces of evidence, the government called the victim during its case in chief. The victim testified at length and in detail about her tumultuous relationship with appellant and the charged offenses. Curiously, trial counsel's offer of the evidence "pursuant to" and "in accordance with" the court's preliminary ruling is incongruent with subsequently calling the victim to testify. Put simply, if the victim was willing to testify for the government, the evidence was not admissible under M.R.E. 807. It is difficult to discern what the government's rationale was for its actions. Regardless of these actions, the defense may have tactically decided not to object to the admission of the victim's hearsay statements.[11]

Again, defense did not merely fail to object but affirmatively stated "no objection" to the admission of the victim's statements as residual hearsay. As our superior court stated, there may be circumstances in which a "no objection" statement does not constitute waiver. *Campos*, 67 M.J. at 332. But in this case, where appellant, as in *Campos*, had advance notice of the substance of the testimony and the impact to the case, and was presented "with an opportunity to voice objections" and affirmatively responded with none, the record reflects an intentional relinquishment of a known right. *Id.* at 333. The defense discussed the matter giving rise to the alleged error with the military judge and litigated the issue at length. While the government's proffer of offering the evidence pursuant to the military judge's ruling created some ambiguity, the military judge's ruling was clear: the admissibility of the evidence was conditioned on the victim being uncooperative at trial. And when any ambiguity was dispelled by the victim taking the stand, the defense failed to renew the objection before, during, or after the victim's testimony. Being fully aware of the right to exclude the evidence and the condition of the military judge's ruling, by affirmatively stating "no objection," as well as failing to later object upon the victim testifying, appellant waived any objection to the admission of the 911 call and body camera footage as residual hearsay.

Assuming, however, that waiver does not apply, we find no prejudice under a plain error review. The victim testified, thereby satisfying appellant's right to confrontation and due process. Therefore, we apply the test for prejudice for non-

---

[11] We note the defense cross-examined the victim about whether she had been physical with appellant on the night of 18 July 2022, which she disclaimed in her statements recorded on the bodycam footage.

constitutional evidentiary errors and look to "whether the error had a substantial influence on the findings." *United States v. Kohlbek*, 78 M.J. 326, 334 (C.A.A.F. 2019) (citation and internal quotation marks omitted). In doing so, the court weighs: "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Id.* at 334. (citations and internal quotation marks omitted). "When assessing the materiality and quality of the evidence, this [c]ourt considers the particular factual circumstances of each case." *United States v. Washington*, 80 M.J. 106, 111 (C.A.A.F. 2020) (listing non-exhaustive considerations for courts to consider to include "the extent to which the evidence contributed to the government's case" and "the extent to which the government referred to the evidence in argument").

Applied here, the government's case was strong. The victim testified in detail about appellant's offense and the events leading up to and after the assault. Her testimony that appellant struck her in the face with a shoe was corroborated by evidence of her bloodied lip, observed by the responding EMTs and treating physicians and documented by medical records and photographs in evidence. Her testimony was also corroborated by appellant's own admission of striking her that evening.

We agree with appellant that the defense's case was also strong, but it was strong for the five specifications that resulted in findings of not guilty. The victim's inconsistencies and the evidence in favor of the defense were relevant to the strangulation and other assault charges appellant faced, but not so for the sole specification of which the panel ultimately convicted appellant.

The quality of the evidence weighs in favor of appellant. The pieces of evidence were audio and video of the victim sounding and looking distraught shortly after the assault. As the government prefaced during their opening statement, the 911 call and body camera footage gave the panel "concrete evidence . . . voices you can hear on recordings." The video of the victim depicted her lying in a hospital bed. This was evidence of a type that would have a tendency to influence the trier of fact. *United States v. Cunningham*, 83 M.J. 367, 373 (C.A.A.F. 2023) ("The quality of the evidence may be assessed by its tendency, if any, to influence the trier of fact. . ."). On the other hand, portions of the 911 call were already properly admissible under M.R.E. 803(3). The panel members would have been able to hear the state of the victim's distress on the 911 call, regardless.

The materiality of the evidence weighs in favor of the government. While the residual hearsay statements were prominent pieces of the government's case-in-chief—as demonstrated by the government's alluding to them during opening statement and referencing them multiple times in their closing argument—significantly, the statements did not include any additional facts to the evidence

12

already admitted at trial. *See United States v. Yammine*, 69 M.J. 70, 78 (C.A.A.F. 2010) ("When a fact was already obvious from . . . testimony at trial and the evidence in question would not have provided any new ammunition, an error is likely to be harmless.") (citations and internal quotation marks omitted)). The statements on both recordings echoed the victim's testimony as well as similar statements the victim gave to treating medical personnel separately admitted at trial. Thus, the evidence provided no new ammunition. Notably, the victim stated in both the 911 call and body camera video that appellant strangled her—an offense of which the panel acquitted appellant—indicating the factfinder did not find these particular hearsay statements overly persuasive. Excluding this evidence, the remainder of the government's evidence was strong, to include appellant's own admission of striking the victim.

That said, even assuming the objection to the admission of the victim's statements as residual hearsay was not waived, we conclude the evidence did not have a substantial influence on the findings and consequently did not prejudice a substantial right of appellant.[12]

### B. Improper Argument

Next, we address whether the prosecution's closing and sentencing arguments inappropriately referenced appellant's Fifth Amendment right to not testify or were otherwise improper.[13]

---

[12] The government argues that the 911 call and portions of the body camera video were admissible as prior consistent statements under M.R.E. 801(d)(1)(B) to rebut express and implied charges that the victim was acting from a recent improper motive or influence in testifying, as reflected by the military judge's instructions to the panel. We note, however, when the 911 call and body camera video were admitted into evidence, the victim had not yet testified, which is a prerequisite to admitting a prior statement as non-hearsay under M.R.E. 801(d)(1)(B). But because we determine that even in the absence of waiver, there is no prejudice to appellant, we need not address any other theories of admissibility.

[13] Appellant framed the assignment of error as whether the military judge abused his discretion in allowing the prosecution to comment on appellant's right to silence during closing and sentencing argument. This framing applies to sentencing where the military judge permitted the argument appellant alleges was error over objection by defense counsel. In contrast, during closing, the military judge interrupted the prosecution's argument and immediately provided a curative instruction. Thus, we analyze the issue through the lens of whether the prosecution's actions amounted to prosecutorial misconduct rather than through the lens of the abuse of discretion standard. *See United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) ("Improper argument is one facet of prosecutorial misconduct.").

*1. Applicable Law*

We begin by reminding practitioners that the role of government counsel is unique, in that, as "the servant of the law" and the representative "of a sovereignty whose obligation is to govern impartially," his or her interest is not to win but to do justice above all. *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). Government counsel "may prosecute with earnestness and vigor – indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from a wrongful conviction as it is to use every legitimate means to bring about a just one." *Id.* Thus, an argument which "oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer" can amount to prosecutorial misconduct. *Id.* (quoting *Berger*, 295 U.S. at 84) (internal quotation marks omitted)). A trial counsel's argument "which comments upon an accused's exercise of his or her constitutionally protected rights is beyond the bounds of fair comment." *United States v. Moran*, 65 M.J. 178 (C.A.A.F. 2007) (quoting *United States v. Edwards*, 35 M.J. 351, 355 (C.M.A. 1992)) (internal quotation marks and additional citations omitted).

The Fifth Amendment privilege against self-incrimination, as applicable to servicemembers, provides not only an accused with the right not to testify but precludes "comment by the prosecution on the accused's silence." *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005) (quoting *Griffin v. California*, 380 U.S. 609, 615 (1965)) (internal quotation marks omitted). "It is black letter law that a trial counsel may not comment directly, indirectly, or by innuendo, on the fact that an accused did not testify in his defense." *United States v. Flores*, 69 M.J. 366, 371 (C.A.A.F. 2011) (quoting *United States v. Mobley*, 41 M.J. 273, 279 (C.M.A. 1990)) (internal quotation marks omitted). This principle also applies during sentencing proceedings. *United States v. Paxton*, 64 M.J. 484, 487 (C.A.A.F. 2007) ("A sentencing argument by trial counsel which comments upon an accused's exercise of his or her constitutionally protected rights is 'beyond the bounds of fair comment.'") This does not mean a prosecutor is always precluded from commenting on the accused's privilege against self-incrimination where, for instance, the defense invites the error or the government's statement is in "fair response" to a defense's claim. *United States v. Gilley*, 56 M.J. 113, 120-21 (C.A.A.F. 2001) (quoting *United States v. Robinson*, 485 U.S. 25 (C.A.A.F. 1988)). In context, a trial counsel's statements implicating an accused's assertion of his rights, "may appropriately be made in rebuttal." *Moran*, 65 M.J. at 186.

It is also permissible for government counsel to "comment on the defense's failure to refute government evidence or to support its own claims." *United States v. Paige*, 67 M.J. 442, 448 (C.A.A.F. 2009); *see also* Rule for Courts-Martial [R.C.M.] 919(b) ("Arguments may properly include reasonable comment on the evidence in the case, including inferences to be drawn therefrom, in support of a party's theory

of the case.").[14] A constitutional violation arises, however, when the accused alone has the information to contradict the government's evidence or the comment would cause the panel to naturally and necessarily interpret it as a comment on the accused's failure to testify. *United States v. Webb*, 38 M.J. 62, 66 (C.A.A.F. 1993); *compare Carter*, 61 M.J. at 34 (trial counsel's comments that the facts and evidence were "uncontradicted" and "uncontroverted" were impermissible and in violation of the Fifth Amendment protections where only the accused possessed the information to contradict the Government's evidence) *with Paige*, 67 M.J. at 499 (finding no error in the trial counsel's references to "uncontradicted" evidence where the accused's testimony was not the only means to refute the government's evidence). Thus, courts assess the argument within "the context of the entire trial." *United States v. Cueto*, 82 M.J. 323, 333 (C.A.A.F. 2022); *see also United States v Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000) (the court's inquiry "should not be on words in isolation," but rather viewing the government's argument "within the context of the entire court-martial." (citations omitted)).

Prosecutorial misconduct is not limited to violations of constitutional provisions but can arise by trial counsel's action or inaction in violation of other legal norms or standards found in "a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Meek*, 44 M.J. 1, 5 (C.M.A. 1996). Thus, a prosecutor violates those legal norms and standards by offering a "'personal belief or opinion as to the truth or falsity of any testimony or evidence.'" *Fletcher*, 62 M.J. at 179 (quoting both *United States v. Horn*, 9 M.J. 429, 430 (C.M.A. 1980) and ABA Standards, The Prosecution Function, § 5.8(b) (1971)). Doing so is improper because those opinions or beliefs "become 'a form of unsworn, unchecked testimony and tend to exploit the influence of [the] office and undermine the objective detachment which should separate a lawyer from the cause for which she argues.'" *Fletcher*, 62 M.J. at 179-180 (citations and internal quotation marks omitted) (alteration in original). A trial counsel improperly expresses a personal belief or opinion by either "giving personal assurances that the Government's witnesses are telling the truth" or "offering substantive commentary on the truth or falsity of the testimony and evidence." *Fletcher*, 62 M.J. at 180 (internal citation omitted). This is improper vouching. *Id.*[15]

---

[14] The discussion to R.C.M. 919(b), however, clearly provides, "Trial counsel may not comment on the accused's exercise of the right against self-incrimination or the right to counsel. *See* Mil. R. Evid. 512." Military Rule of Evidence 512 provides an accused's claim of privilege "is not a proper subject of comment by the military judge or counsel for any party."

[15] "Improper vouching can include the use of personal pronouns in connection with assertions that a witness was correct or to be believed" such as "'I think it is clear,'

(continued . . . )

In evaluating prejudice of nonconstitutional errors and whether an improper argument materially prejudiced an accused's substantial right, our superior court adopted three factors to consider:

(1) the severity of the misconduct[;]

(2) the measures adopted to cure the misconduct[;] and

(3) the weight of the evidence supporting the convictions.

*Fletcher*, 62 M.J. at 184; *see also United States v. Norwood*, 81 M.J. 12 (C.A.A.F. 2021) (using *Fletcher* factors to address improper vouching). Our superior court also adopted these factors to assess improper sentencing arguments, except in lieu of the weight of the evidence to support the conviction, courts consider "the weight of the evidence supporting the adjudged sentence." *United States v. Erickson*, 65 M.J. 221, 224-26 (C.A.A.F. 2007).

If the error involves a constitutional right, however, the "prejudice analysis is different" and "the Government must prove that the error was harmless beyond a reasonable doubt." *Cueto*, 82 M.J. at 334 (citing *United States v. Tovarchavez*, 78 M.J. 458, 460 (C.A.A.F. 2019)). A finding of prejudice "will depend on 'whether there is a reasonable possibility that the evidence [or error] complained of might have contributed to the conviction.'" *Moran*, 65 M.J. at 187 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)) (alteration in the original) (quotation marks and additional citation omitted).

*2. Discussion*

*a. Closing Argument*

Trial counsel's comment during closing argument—"now [appellant] didn't testify, no comment on that"—was a clear violation of appellant's constitutional right and longstanding black letter law. This was not an indirect reference or ambiguous innuendo. It was a clear, direct reference to appellant's decision not to testify on his own behalf in exercise of his right to remain silent. Further, it was made immediately after trial counsel's vouching for the victim's credibility, in a case where appellant was the only eyewitness to refute the victim's testimony that

---

( . . . continued)
'I'm telling you,' and 'I have no doubt.'" *Fletcher*, 62 M.J. at 180 (citation omitted); *see also* R.C.M. 919(b), Discussion ("Counsel should not express a personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt or innocence of the accused, nor should counsel make arguments calculated to inflame passions or prejudices.").

appellant struck her. It was also not a "fair response" to a claim or argument by the defense. Trial counsel's later backtracking to say he was referring to the defense's theories (after defense moved for a mistrial) is belied by the very nature of the statement "the accused did not testify." Moreover, it is the argument itself rather than the intent of counsel that is dispositive. *Baer*, 53 M.J. at 239 ("we hold that the touchstone of whether an argument is improper is not based on the calculation of counsel making it, but is rather the argument itself viewed in its entire context."). We also do not find that this was a slip of the tongue. Trial counsel did not comment once but twice that the accused did not testify, the second time after defense objected.

The trial counsel's reference to appellant's privilege against self-incrimination was further compounded by his vouching for the victim's credibility: "I submit to you that [the victim] could not have been more open and honest" – "I don't think she lied to you once in here." While these statements were not objected to, it was likely because the military judge immediately intervened and admonished the counsel *sua sponte*.[16] The trial counsel's statements attesting to the victim's credibility were shortly followed by comments that appellant was not credible and that he did not testify—comments which were made while using a powerpoint slide that directed the members to weigh the credibility of each witness—all of which taken together improperly implied appellant had an obligation to produce evidence to contradict the government's evidence. Thus, viewing the trial counsel's statements in their entire context, the closing argument was a blatant violation of the law and appellant's Fifth Amendment privilege.

The military judge took immediate measures to cure the misconduct. In each instance, the military judge interrupted counsel's argument to instruct the panel appropriately: that the "Government cannot vouch for a witness's credibility" and to "completely" disregard the fact that appellant was not a witness. The military judge obtained confirmation from all the panel members that they understood his instructions. *Sewell*, 76 M.J. at 19 (stating "We presume, absent contrary indications, that the panel followed the military judge's instructions that trial counsel's arguments were not evidence and that it must not engage in spillover when determining Appellant's guilt."). We note, however, the military judge did not also specifically clarify that in addition to understanding the instructions that the panel members would *follow* the instructions as well. *Cf. United States v. Hornback*, 73 M.J. 155, 161 (C.A.A.F. 2014) (military judge "issued repeated curative instructions

---

[16] During the government's case-in-chief, the military judge had previously directed the prosecution to stop commenting on witness testimony as "fantastic;" "excellent;" and "that makes a lot of sense." The military judge told the trial counsel, "you have to not testify . . . Don't do it again, or else I'll stop you. Just 'okay' is fine, but 'fantastic, excellent,' it just – it could be commenting on the evidence, and that's not your job."

to the members, each time eliciting that they understood and would follow his instructions"); *United States v. Ashby*, 68 M.J. 108, 123 (C.A.A.F. 2009) (military judge asked each member whether he could follow the military judge's instructions). It would have been better had the military judge also made that inquiry of the panel members but under the circumstances, we find it was sufficiently implied.[17] The findings of the panel members, in acquitting appellant of four of the five charges— including the strangulation offense from the same night—reflect that the panel members did exactly what the military judge instructed them to do and disregarded trial counsel's argument. In other words, the panel members drew no negative inference from appellant's invocation of his right to silence.

The weight of the evidence supporting the conviction, as discussed in the previous assignment of error, was overwhelming. The victim took the stand and testified subject to cross-examination that appellant struck her with his shoe. Her testimony was corroborated by medical records, photographs of her physical injury, her statements to the responding EMTs and treating hospital staff, and appellant's own admission that he struck the victim.

Thus, in consideration of all the above, we determine there is no reasonable probability that the government's closing argument contributed to appellant's conviction. The error was harmless beyond a reasonable doubt. That said, harmlessness beyond a reasonable doubt is a high burden for the government on appeal. While we find no prejudice, our conclusion is based on the unique facts of this case: the overwhelming evidence, the military judge's immediate curative instructions, and the mixed findings of the panel members. Our finding of no prejudice should in no way be seen as permissive of counsel's arguments here. The goal of the government is justice. And justice is not done when a conviction comes at the peril of an accused's constitutional rights.

### b. Sentencing Argument

We now turn to the government's sentencing argument and determine whether the special trial counsel's argument—that he would seek a higher sentence because of appellant's lack of accountability during his unsworn statement—was improper. We find the sentencing argument was permissible under the law.

As discussed, the prosecution is prohibited from commenting on an accused's exercise of his constitutional privileges, even during sentencing. But if the proper foundation is made, the prosecution may comment on an accused's refusal to admit guilt, a lack of remorse, or on his recalcitrance. *Paxton*, 64 M.J. at 486-87. "[A]n accused's refusal to admit guilt after findings may be an appropriate factor for the

---

[17] We also note the military judge's findings instructions reiterated this instruction, as previously requested by the defense.

member's consideration in their sentencing deliberation on rehabilitation potential but only if a proper foundation has been laid." *Id.* (citation omitted); *see also* R.C.M. 1001(b)(5) (discussing rehabilitative potential); R.C.M. 1002(f) (outlining sentencing factors for the court-martial to consider). "As a general rule, the predicate foundation is that an accused has either testified or has made an unsworn statement and has either expressed no remorse or his expressions of remorse can be arguably construed as being shallow, artificial, or contrived." *Edwards*, 35 M.J. at 355 (citations omitted). Other evidence in the record can also give rise to the inference that an accused lacks remorse. *See Paxton*, 64 M.J. at 487. An inference that the accused lacks remorse, however, "can not arise solely from an accused's exercise of his or her rights." *Edwards*, 35 M.J. at 356.

Here, the predicate foundation was laid: appellant made an unsworn statement, during which he omitted any mention of the victim or an apology. In light of our superior court's precedent, we agree with the military judge that the government was then permitted to argue an adverse inference from appellant's unsworn statement and the absence of an expression of remorse or accountability, relevant to rehabilitative potential.

Therefore, the prosecution's argument was neither improper nor in error. Assuming it was error, however, any prejudice was harmless. The military judge allowed defense to reopen their sentencing case, in the middle of the government's sentencing argument, to admit appellant's anger management certificate to rebut the argument that appellant lacked accountability. [18] We also note that while the government requested a sentence of twenty months of confinement and a dishonorable discharge, the military judge's adjudged sentence included a sentence significantly less—a bad-conduct discharge and 120 days (or 4 months) of

---

[18] Appellant urges us to adopt the cumulative error test articulated by the 10th Circuit in *United States v. Rivera*, 900 F.2d 1462 (10th Cir. 1990), which aggregated the constitutional and non-constitutional errors to determine prejudice using the harmless beyond a reasonable doubt standard. We find no reason, however, to deviate from the cumulative error doctrine as articulated by our superior court. *See United States v. Pope*, 69 M.J. 328, 335 (C.A.A.F. 2011). "Under the cumulative-error doctrine, 'a number of errors, no one perhaps sufficient to merit reversal, in combination necessitate the disapproval of a finding.'" *Id.* (quoting *United States v. Banks*, 36 M.J. 150, 170-71 (C.M.A. 1992)). The court will only reverse if the cumulative errors denied the appellant a fair trial. *Id.* We have considered both the prosecution's improper vouching for the victim and the inappropriate comment on appellant's exercise of his right to silence in determining the prosecution's conduct was harmless beyond a reasonable doubt. Assuming the prosecution's sentencing argument was also in error, our conclusion remains the same.

confinement. Under our Article 66, UCMJ, authority, we find appellant's sentence is appropriate.[19]

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.[20]

Senior Judge MORRIS and Judge JUETTEN concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

---

[19] Because appellant's conviction is for an offense that occurred after 1 January 2021, we review appellant's case under the new version of Article 66, UCMJ. Under the relevant part of that statute, this court, under its sentence appropriateness authority, may consider whether the sentence (1) violates the law, (2) is inappropriately severe, or (3) is plainly unreasonable.

[20] Block 8 of the Judgment of the Court incorrectly states "Military Judge Alone." Block 8 of the Judgment of the Court, is hereby amended to reflect "Enlisted Panel." *See* R.C.M. 1111(c)(2).